hand, ask that the decree be in substance several decrees; that is to say, that it condemn the schooner for each several amount of loss, and award execution to each libelant to collect the amount of his separate loss. The materiality of these conflicting claims is supposed to arise from the apprehension of an appeal by the libelants to the supreme court, and a suggestion that, if the decree were in the form last mentioned, no appeal would lie from those parts of the decree which awarded to either or any of the libelants a sum less than $2,000; and that the supreme court would not have jurisdiction to reverse any part except that which awards more than $2,000 to one of the libelants. Whether the form proposed by the claimants of decreeing the payment of a gross sum, to be distributed among the libelants, will affect the question of the jurisdiction of the supreme court to reverse the whole decree if found erroneous, is not for this court to decide. If the apparent injustice of compelling the claimants to pay a part of the loss when the decision of the supreme court, as the case may be, declares that the claimants or their schooner have been wrongfully condemned, and ought not to be required to pay anything, can be avoided without violating any important rule of practice or form, then surely such avoidance would be matter for satisfaction rather than regret. Such apparent injustice was strongly illustrated in the case of Rich v. Lambert, 12 How. [53 U. S.] 347, and perhaps still more strikingly in the cases of The Mary Eveline, [Case No. 9,211;] and Merrill v. Petty, 16 Wall. [83 U. S.] 338, 348. I therefore settle the decree in the form which the claimants have requested.

[NOTE. In affirming the decree of the circuit court, Mr. Justice Clifford, speaking for the supreme court, said: Everywhere it is admitted that an appeal in admiralty carries up the whole fund, and that it is the duty of the circuit court to execute its own decree; and it is equally clear that the fund in this case consists of the stipulation given in the district court for costs, the stipulation given there for value, and the bond or stipulation in the sum of $2,000, to prosecute the appeal with effect, and pay all damages and costs awarded against them, if the appellants shall fail to make their appeal good. Montgomery v. Anderson, 21 How. (62 U. S.) 386. Two points were ruled in that case applicable to this: (1) That the appeal in admiralty carries up the res; (2) that the circuit court must carry into execution its own decree. The Collector, 6 Wheat. (19 U. S.) 194; 2 Pars. Shipp. 493. Sureties in such an appeal bond or stipulation may become liable for the whole amount specified, as the condition of the instrument is that the principal shall prosecute his appeal with effect, and pay all damages awarded against the appellant, if he fail to make good his appeal. Hence it was decided by this court that the surety in such a bond is liable for the entire amount of damages and costs, to the extent of the penalty, and interest thereon from the date of the institution of the suit, when the property attached produces less than the judgment or decree. Ives v. Merchants' Bank, 12 How. (53 U. S.) 159. Examined in the light of these suggestions, as the decree should be, it is mainfest

that it contains no error, as the amount of the stipulation for value is decreed to be paid to the libelants in part discharge of the taxed costs, leaving the balance of the taxed costs and the accrued interest from the date of the decree in the district court to the date of the decree in the circuit court to be paid by the sureties in the appeal bond, which may, by the rules and usages which belong to courts of admiralty, be treated as an admiralty stipulation. 1 Stat. 276; Adm. Rules, 5, 21.]

# Case No. 678.

## The AVID.

[3 Ben. 434.] [1]

District Court, E. D. New York. Oct., 1869.

COLLISION AT PIER—ICE—MOORING—COSTS.

1. A bark and a barge were both moored alongside a pier. The bark's long-boat was hanging under her counter, close down to the water, from lines run from the stern, there being no davits. A floe of ice came into the slip, and parted the barge's lines, and drove her against the long-boat, and crushed it: Held, That the barge was in fault, in not being properly moored;

2. That the bark was in fault, in reference to the position of the boat;

3. That the damages must be divided;

4. That costs would not be allowed for depositions which were illegible.

[Cited in The Mary Patten, Case No. 9,223.]

In admiralty.

BENEDICT, District Judge. This action is brought to recover for the destruction of the long-boat of the bark Algiers, by being crushed by the barge Avid, during the night of the 14th of February, 1869. The bark and the barge were both moored alongside pier 28, in the East river. The long-boat was hanging under the bark's counter, close down by the water, the ropes running from the stern, there being no davits. While in this position, the ice came into the slip, during the night, with sufficient force to part the barge's fastenings, and drive her ahead upon the long-boat, thus doing the injury complained of.

It is manifest that the long-boat was swung in an improper and dangerous place, where it was greatly exposed to injury from neighboring vessels. For this reason, the bark must be held in fault. The Phoenix, [Case No. 11,-111.]

The remaining question is, whether there was fault on the part of the barge, in regard to her fastenings, which should render her also responsible for the accident.

On the part of the bark, it is proved by the mate, that he went on board the barge, on hearing the crash; that he then examined the barge; that he found the stern line had parted; and that he, at the time, complained to the master of the barge, that his line was not sufficient to hold his vessel. The master of the bark, also, is called, who does not appear, however, to have examined the lines of the

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

barge until morning, when he saw the stern line that had parted.

On the part of the barge, no witness is called but the claimant himself, who swears that the barge was made securely fast to the pier, by stem and stern lines, and a seven-inch breast line; that a floe of ice came in the slip, which parted the stern line and the bow line, and pulled off the cavil, to which the breast line was fastened, and thus his barge was driven into the long-boat. He further says, that he hove his boat back by the windlass. But in the answer, which is sworn to by this same claimant, it is expressly stated, that but one line parted, "leaving two lines still secured to the pier; that in a few moments the barge sprung back to her lines, and it was then discovered that the long-boat had been smashed." The account given in the answer thus differing from the account given upon the stand, a doubt is raised as to the sufficiency of the barge's fasts, which is further strengthened by the fact that no vessel broke adrift, except this barge, and that the barge herself received no injury from the pressure of the ice. In this posture of the evidence, it must be held that the claimant has failed to show that the drifting of the barge was caused by the overwhelming power of the ice, and not from any carelessness or neglect in her fastenings, and that the barge is also chargeable with fault.

There being, then, fault found on both sides, the damages will be apportioned.

In taxing the costs, the clerk will strike from the libellant's bill of costs the fees for the depositions, because of their extreme illegibility, as presented to the court. A reference may be had, to prove the amount of the damage, unless the parties can agree on the sum.

---

## Case No. 679.

### AVIL v. ALEXANDRIA WATER CO.

[1 Hughes, 408.][1]

Circuit Court, E. D. Virginia. April, 1877.

CONFISCATION AND SALE OF CORPORATE STOCK—FRAUD—BONA FIDE PURCHASER.

Where shares in a corporation were sold by the United States marshal, under a decree of confiscation rendered under like circumstances to those condemned by the United States supreme court in Windsor v. McVeigh and Gregory v. McVeigh, 93 U. S. 274, 284, the corporation had denied the purchaser's title, and that purchaser had sold the stock to the plaintiff, *Held*, in an action of trespass on the case for value, that the corporation was not liable to the plaintiff for the stock or unpaid dividends. if his vendor's title was under a confiscation sale, and the corporation had denied its validity, and the plaintiff had had such notice of these facts before his purchase as should have put him upon inquiry.

---

[1] [Reported by Hon. Robert W. Hughes, District Judge.]

[At law. Trespass on the case by John Avil against the Alexandria Water Company. Verdict and judgment for defendant.]

On the 14th day of May, 1864, ten shares of stock in the Alexandria Water Company, standing in the name of W. N. & J. H. McVeigh, citizens of Alexandria, but then within the lines of the confederate army, were sold under a decree of the United States district court in a libel for confiscation which had been rendered under the same circumstances as those described in the cases of Windsor v. McVeigh and Gregory v. McVeigh, decided by the United States supreme court, and reported in 93 U. S. 274 and 284. That is to say, the appearance and the answer of the claimant of the property libelled for confiscation, had been stricken out at the trial of the libel, and a decree of condemnation entered without opportunity being given to the claimant to make defence. The purchaser of the stock at the United States marshal's sale of it was Wm. A. Duncan, of Alexandria county, Virginia, and a certificate of stock was issued to him by the water company as of the day of the marshal's sale. Dividends on the stock were paid to this purchaser, as they were declared, up to 1866; and dividends had accrued since to the amount of $347.50. Since 1866 the company had denied the title of this purchaser to the stock.

On the 6th March, 1874, Wm. A. Duncan, by indorsement on the certificate of stock, had assigned these ten shares to John Avil, a citizen of Pennsylvania, his brother-in-law, and coupled with the assignment a power of attorney in blank to make the proper transfer on the books of the water company. Demand had been made upon the company for transfer by Avil, on the 23d April, 1874, and had been refused. Evidence going to show that Avil, at the time of and before he received the assignment of the stock from Duncan, knew the character of his title, was given to the jury; and it was proved that the consideration of the purchase was a note of hand, not yet paid, given by Avil to Duncan in a considerably less amount than the face or market value of the stock.

At the trial, the court instructed the jury that if they believed that W. A. Duncan's title was obtained through a confiscation sale that was not legal, in May, 1864, and that there had been a continual denial of the validity of Duncan's title by the defendant company since June, 1867, and that the plaintiff had had notice of this fact as should have put him upon inquiry as to the character of that title before purchasing the shares of stock in question, they should find for the defendant. The jury returned a verdict for the defendant; and judgment was rendered accordingly.

W. Willoughby, for plaintiff.
S. F. Beade, for defendant.