NEILSON, The (MESSENA v.). See Case No. 9,493a.

NEILSON, The JOHN. See Case No. 4,241.

─────────

## Case No. 10,093.

### The NELLIE.

[7 Ben. 497.] [1]

District Court, S. D. New York. Dec., 1874.

COLLISION AT PIER IN EAST RIVER—CONTRIBUTORY NEGLIGENCE.

A tug, coming up the East river, with an elevator in tow, sought to swing the elevator into the proper position to enter a slip, and in so doing allowed it to touch the stern of a barge moored at the end of the pier and projecting. The tug had full knowledge of the position of the barge: *Held*, that the tug was responsible for the damages to the barge, and the position of the latter was not contributory negligence,

─────────

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

it not being shown that she was not rightfully where she was.
[Cited in The Canima, 17 Fed. 272; Shields v. Mayor, 18 Fed. 749; The Nettie, 35 Fed. 615; Pope v. Seckworth, 47 Fed. 832.]

In admiralty.

William J. Haskett, for libellant.
Samuel G. Courtney, for claimant.

BLATCHFORD, District Judge. The libellant, as owner of the barge Hudson River, brings this suit against the steamtug Nellie, to recover for the damages sustained by him through a collision, wherein the barge was injured, on the 5th of May, 1873. The barge was lying at the outer end of pier 45, East river, with her stern down, taking in cargo. The tug, with an elevator lashed to her starboard side, came up the river and rounded to, for the purpose of going into the slip next below pier 45, and then proceeded to enter such slip, the tide being flood, and intentionally brought the side of the elevator in contact with the barge, for the purpose of swinging the elevator around with the tide, so that it might be shoved bow forward into the slip. The libel alleges, that the tide swung the tug and the elevator around under the stern of the barge, and that the rudder post and a pintle of the barge were broken.

The answer sets up, as faults in the barge, causing or contributing to the collision, that the barge was improperly berthed at an exposed and dangerous place at the end of the pier; that her stern projected beyond the side of the pier and into the space where the tug and the elevator had a right of way; that the barge was so improperly trimmed, that her rudder and its appurtenances were lifted above the water line, and exposed to danger, and deprived of the protection of the fantail of the barge; and that the barge was not provided with fenders over her stern.

It is satisfactorily established by the evidence, that the elevator, moved by the tug, struck the rudder of the barge and did the damage complained of. If the tug and the elevator were to enter the slip on a strong flood tide, it was, undoubtedly, necessary for them to manoeuvre as they did. But the barge was in full view. If she was down by the head, and her stern was raised, her condition and position were plainly visible. The tug assumed the risk of entering the slip without injuring the barge. If the barge was exposed, by being at the end of the pier and by having her stern projecting into the water space of the slip, such exposure made it incumbent on the tug to exercise the greater caution. The barge was helpless. It is not shown that she was not rightfully where she was. The tug had no such right of way as conferred upon her the right to injure the barge, without being responsible for such injury. It is shown that the barge had in position all customary fenders.

There must be a decree for the libellant, with a reference to a commissioner to ascertain the damages.