## THE CANIMA. (Two Cases.)

### (*District Court, S. D. New York.* June 26, 1883.)

1. COLLISION—CANAL-BARGE.

    If a canal-boat, after being assigned a berth within the slip, is moved so as to project beyond the pier, and there left with no one on board, it is at her own risk of collision with other vessels making a landing.

2. SAME—DAMAGES.

    The steamer C., in making a landing at the pier below, having struck the bows of the canal-boat in rounding about, *held,* she was also chargeable with fault, as there was room for her to land without coming up so far as the canal-boat ; and the damages of the collision were divided.

3. SAME—SET-OFF.

    Where the owner of the cargo recovers his whole damage from one of two vessels in fault, the vessel sued may set-off in another suit between the owners of the two vessels, tried at the same time, the one-half of the damage to the cargo which ought to be paid by the other vessel.

In Admiralty.

*J. A. Hyland,* for libelants.

*Butler, Stillman & Hubbard,* for claimants.

BROWN, J.   The libels in the above cases were filed by the owner of the canal-boat Charles T. Redfield, and by the owners of the 223 tons of coal on board of her, to recover their respective damages from the sinking of the canal-boat by a collision with the steam-boat Canima, about 11 A. M. of the twenty-seventh of August, 1880.

The weight of evidence shows that the canal-boat, though previously assigned by the harbor-master to a berth wholly within the slip on the north side of pier 48, North river, the afternoon before, had been moved further out that morning by her captain, preparatory to discharging the coal, and that at the time of the collision she was lying on the north side of the pier, with her bows projecting some 10 or 15 feet into the river beyond the end of the pier.   The Canima had come up the river with a strong flood-tide and a southerly wind, and was preparing to land at the south side of pier 47, bows out. For that purpose a line had been cast from her starboard quarter and made fast to the end of pier 47, and as she drifted up slowly with the tide, and with her engines reversed, the bluff of her starboard bow struck, or rubbed against, the starboard bow of the canal-boat, causing the latter to sink almost immediately.   No one was aboard the canal-boat at the time, and the steamer's hail to move, or loosen her lines, were therefore unheeded.   The witnesses from the steamer say that the blow was only the ordinary rubbing of vessels against each other in such circumstances, and that the canal-boat sank only because she was old, and too rotten to withstand the ordinary pressure.   The canal-boat was 12 years old, and had been extensively repaired, except her bow and stern.   That hails were given to the canal-boat to move, or loosen her lines, leads to the inference that the collision was not a mere rubbing or pressure, but was some-

thing of a blow. I do not think it necessary, however, to determine, upon the meager evidence before me, the question of the soundness of the boat.

The evidence shows that the Canima might and should have avoided the canal-boat altogether, although the latter projected beyond the pier. The Canima, to effect her landing, was under no necessity of going up so far as the canal-boat lay, as is shown by the distance between the piers as compared with her own length,—in this respect differing from the case of *The Cornwall*, 8 Ben. 212; and it is clear that earlier and more effective backing would easily have prevented the collision. She cannot, therefore, be held free from fault.

But the canal-boat is also chargeable with negligence contributing to the collision from the position which her own captain voluntarily assumed; her bows moved out beyond the pier, after having a berth wholly inside the slip. This position was one of peculiar exposure to just such collisions, and has repeatedly been adjudged to be a fault, when voluntarily and unnecessarily assumed. *The Baltic*, 2 Ben. 452; *The Cornwall, supra*; *The Avid*, 3 Ben. 434. After being once safely located inside the slip, she had no right to move her bows so as to project outside, except at her peril. In the case of *The Nellie*, 7 Ben. 497, the elevator was intentionally swung by the tug against the barge, and consequently at the tug's own risk.

In addition to this, the canal-boat was left fastened in this exposed situation with no one on board to render any aid in averting threatened danger. There was negligence, therefore, in both respects; and Grimes, the owner of the canal-boat, is, therefore, entitled to but half his damages, with costs.

Duncan, the owner of the cargo, is entitled to recover his whole damages, with costs, as in the case of *The Atlas*, 93 U. S. 302. But as the steam-ship, in paying the owner of the cargo, sustains damage to that amount, she is entitled on payment to offset this against the loss recoverable by the owner of the canal-boat, so far as that will go; or, what comes to the same thing, the steam-boat may charge against the sum payable to the owner of the canal-boat, the one-half of the damages to the cargo; which the latter ought by reason of his negligence to pay for the cargo, as in the case of *The Eleanora*, 17 Blatchf 88, 105. *The C. H. Foster*, 1 FED. REP. 733; *Leonard* v. *Whitwill*, 10 Ben. 638, 658; *Atlantic Mut. Ins. Co.* v. *Alexandre*, 16 FED. REP. 279.

A reference may be taken to compute the amount.