## THE NETTIE.

## THE WILLIAM ORR.

## THE A. C. HOPSON.

(*District Court, N. D. New York.* July 3, 1888.)

COLLISION—BETWEEN TOW AND VESSEL AT DOCK — TOWING WITH LONG HAW-
SER.

The tugs Orr and Nettie were proceeding up the Hudson river, about 35 feet
from the east bank, at a point where the channel was 400 feet in width, with
the canal-boats Duryea and Hopson in tow behind, all in line, making the tow
nearly 500 feet in length from the bow of the Orr to the stern of the Hopson,
when the Hopson sheered to starboard, and struck the canal-boat Lyons, ly-
ing unloaded at her dock, and caused the injuries complained of. It appears
that the current was rapid, the water exceptionally high, and the channel part
of the way narrow and dangerous. *Held* that, in the circumstances, the tugs
were in fault in making up such a tow, and in passing so close to the dock,
and that the Hopson was also in fault, for permitting herself to be towed in
that manner, and thereby contributing to the injury, whether also in fault
from bad steering, improper construction, or improper loading, or not.

In Admiralty. Libel for damages.
*Hyland & Zabriskie*, for libelant.
*W. E. Kisselburgh*, for The Nettie and The Orr.
*J. M. Landon*, for The Hopson.

COXE, J. The owner of the canal-boat Nathaniel Lyons brings this
libel against the steam-tugs Nettie and William Orr, and the canal-boat
A. C. Hopson, to recover damages for injuries received by reason of their
alleged negligence. On the 26th of April, 1887, the Lyons, unloaded,
was lying at her dock at Troy, N. Y., on the easterly side of the Hudson
river. On that day the tugs Nettie and Orr were proceeding up the river
from West Troy to the state dam lock with the loaded canal-boats A. C.
Hopson and W. F. Duryea in tow. They were in the following order: the
Orr, the Nettie, the Duryea, the Hopson. The hawser from the Orr to
the Nettie was about 40 feet in length, that from the Nettie to the Dur-
yea was about 150 feet, and that from the Duryea to the Hopson was
about 30 feet. The tugs are each about 50 feet, and the canal-boats 97
feet, in length. The entire distance, therefore, from the bow of the Orr
to the stern of the Hopson was not far from 500 feet. Opposite where
the Lyons lay, and about 450 feet distant, was an island. On the day
in question, by reason of a freshet, this whole space was navigable. The
tugs took a course about 35 feet from the east bank of the river. When
the Hopson was opposite the Lyons she sheered to starboard, and struck
the latter four or five feet aft of the bluff of her port bow, causing the in-
juries complained of.

No negligence can be imputed to the Lyons. She was rightfully at
the dock, and did nothing to produce the accident. *The Nellie*, 7 Ben.
497. The tugs were clearly in fault in attempting to tow two loaded
canal-boats, one behind the other, up a rapid current, rendered more

dangerous by the presence of exceptionally high water. Each tug should have proceeded with a canal-boat lashed to her side or towed behind with a short hawser. Even in the order adopted there was no apparent need for 220 feet of line. A tow so made up was sure to prove unwieldy in any circumstances; but when it is remembered that for part of the journey it was necessary to proceed up a comparatively narrow and treacherous channel, where obstacles were quite likely to be encountered, the negligence is far more apparent. *The British Empire,* 24 Fed. Rep. 493; *The Margaret,* 94 U. S. 494. It is, perhaps, true that it was more convenient for the tugs to tow as they did, and that better time could thus be made, but such considerations should not be permitted to outweigh those of safety. Again, there was no necessity, with the channel over 400 feet in width, to tow so near the dock, and especially so in view of the unmanageable character of the tow. *The Active,* 22 Fed. Rep. 175; *The C. P. Raymond,* 26 Fed. Rep. 281; *The Uncle Abe,* 18 Fed. Rep. 270. It is said, in exculpation of the tugs, that the Hopson was unskillfully steered, that she sheered badly all the way up the river, and that bad management in this particular caused the collision. If this were so, it was, or should have been, known to the tugs, and only adds to their imprudence in proceeding. *The Wm. Murtaugh,* 3 Fed. Rep. 404; *The Nicholson,* 28 Fed. Rep. 889, 894. Other faults are charged which are all attributable to the fundamental error in the make-up of the tow. There is evidence tending to show that the tugs stopped or slackened speed when the Hopson was nearly abreast of the Lyons, and that the Orr dropped down to aid in landing the boats. It is argued that this was a dangerous and improper maneuver, for the reason that a strong eddy tide set towards the shore near where the Lyons lay. The Hopson, it is said, having ceased to advance, and having thus lost steerage-way, was carried over by the current against the Lyons. The evidence, however, is so contradictory that it is not easy to reach a satisfactory conclusion upon this branch of the case.

Regarding the Hopson, it must be held that her negligence contributed to cause the accident. The impression left by the proof, and also by the manner in which the collision occurred, is, that when the Orr threw off her line the Nettie's speed was diminished, causing a momentary slackening of the hawser, and that this, together with the improper or inattentive steering of the Hopson, caused the collision. On the way up the river she sheered frequently, either through the unskillfulness of the steersman, or because she refused to answer her helm. It is immaterial whether she was improperly handled, or improperly constructed, or improperly loaded; in either event, her master, knowing the defect, and the dangers liable to result, should not have permitted her to be placed in a position attended with so much risk and peril. He should have insisted upon being taken to his destination by a single tug, in the manner before indicated, and not at the tail of a tow 500 feet in length. In contemplation of law the Hopson was as responsible for the make-up of the tow, in some respects, as were the tugs. *The Bordentown,* 16 Fed. Rep. 270.

The libel, *inter alia*, charges negligence on the part of the tugs in the following particulars : "*First*, in towing the said canal-boats by means of such long hawsers; *second*, in towing said canal-boats tailed on one after the other, instead of taking them alongside; *third*, in having the tugs one ahead of the other, instead of being alongside each other." The answer of the claimant of the Hopson, who was her master in command on the day of the accident, specifically admits the truth of these allegations. Before the hawser from the Duryea was fastened to his bow these concededly negligent acts were perfectly obvious to him. He was under no obligation to proceed. He could have insisted upon being towed in a safe and proper manner. Having deliberately and voluntarily placed himself in this exposed and dangerous position, it is not easy to see how he can be relieved of the charge of negligence. The libelant is entitled to a decree against the tugs Nettie and Orr and the canal-boat Hopson, with costs, and a reference to compute the damages.