## THE J. H. DE GRAFF.

(District Court, N. D. New York. March 8, 1895.)

1. TOWAGE—NEGLIGENCE OF TUG—PASSING NEAR OBSTRUCTIONS.

It is negligence in a tug, towing a large barge against a current so swift that the tug, with a hawser of 250 feet, jumps and dodges about in the eddies, to go so near a pier (15 to 40 feet) as to render an accident to the barge possible, if not probable; and, where the barge is heading outward, it is further negligence to signal her to keep closer in, behind the tug.

2. SAME—NEGLIGENCE OF TOW—OBEYING ORDERS MANIFESTLY DANGEROUS.

Where a barge is being towed against a swift and treacherous current, it is negligence in the master, knowing that he is being towed so carelessly that he must pass within a few feet of a dangerous projection, to obey a signal from the tug to head closer in, and follow in her wake.

3. SAME—SIGNALS FROM TUG—PRESUMPTION OF AUTHORITY.

Persons on a barge in tow of a tug on a long hawser have a right to assume that any signal from the tug is made by authority, and it is therefore immaterial whether a given signal is made by the master or the fireman of the tug.

This was a libel against the tug J. H. De Graff to recover damages for negligent towage.

George S. Potter, for libelants.

George Clinton, for respondents.

COXE, District Judge. The libelants, as owners of the barge Fostoria, seek to recover damages for injuries to the barge alleged to be due to the negligence of the steam tug J. H. De Graff. On the 28th of August, 1890, the barge, while being towed by the tug up the Niagara river, struck the Inlet pier, which projects from the Bird Island pier from six to eight feet into the swift current of the river, at a point about opposite the Buffalo waterworks crib. That the Fostoria sustained injury by reason of this collision is admitted. The question to be determined is whether the tug or the barge is responsible for the injury, or are both responsible? The Fostoria was owned in Saginaw, Mich. She had no motive power of her own. It was manifestly her duty to obey the tug whose master was supposed to know all the dangers and obstacles to be encountered. The Lady Pike, 21 Wall. 1; The M. J. Cummings, 18 Fed. 178, and cases cited; The S. S. Wilhelm, 8 C. C. A. 72, 59 Fed. 169, 170.

The impression produced after reading the testimony is that the accident was occasioned by the negligence of both the tug and barge. I do not think that the fault of either alone could have produced it. The tug was at fault in two respects: First, in towing so near the Bird Island pier; and, second, in signaling the barge to keep still closer to the pier. That the current at the point of the accident is swift, treacherous and full of eddies, is conceded. It runs between eight and nine miles an hour and is known as "The Rapids." The Fostoria is about 130 feet long and 26 feet beam. On the day in question she was without a load and drew about 5 feet aft and 4

feet forward. The tug was a small river tug about 45 feet long and 12 feet beam. The hawser between them was about 250 feet in length. The exact distance which the tug kept from Bird Island pier it is impossible to determine from the contradictory testimony returned. The distance varies from 15 to 50 feet, although one of respondents' witnesses testified that it was not unusual to keep within 15 feet of the shore. He says:

· "We have towed barges up there, and we would hug the shore right along, keep right along there all the time. Keep within 15 or 20 feet of the shore. Some men can hold their boat right along and when they come to the pier shoot out around it, and then again I have gone up there with barges when they held them way out into the middle of the river."

That the barge was too near the pier would seem to follow as a fair inference from the fact that she was injured. The Sarah J. Weed, 40 Fed. 844. If the estimate of the libelants is correct the barge, with her greater beam, was only allowed a space of about 10 feet in which to pass the Inlet pier. It was bad seamanship to tow a light barge at the end of a long hawser up a current so swift that even the tug jumped and dodged about in the eddies upon a course so near a dangerous projection that accident was possible if not probable. It was also error on the part of the tug to signal the barge to point nearer to the Bird Island pier. The libelants testify that this signal was given by the master of the tug. It appears from the testimony of the respondents, on the contrary, that it was given by the fireman. It is not material which version is correct for the reason that those on the barge had a right to assume that any signal from the tug was made with authority. Even upon the testimony of the respondents the signal was given after the tug and tow had left Ferry street, and were towing in the swift water along Bird Island pier. At this time the barge was not following directly after the tug but was headed a little out,—upon the tug's starboard quarter. Had she continued in this position no accident could have happened. It is reasonably clear that the change was made because of the signal from the tug and it was negligence to give such a signal in such a dangerous channel and in such close proximity to the projecting Inlet pier. On the other hand, it is thought that the accident might have been avoided if the rules of good seamanship had been observed upon the barge. The testimony for the libelants indicates that the signal from the tug was given when the tug was opposite the Inlet pier. The pier was at that time visible from the barge and she must have known that it was a most hazardous maneuver to starboard. If libelants' witnesses are correct in saying that the tug passed but 15 feet from the pier a collision was almost certain to occur from such a maneuver, but even if the distance were 40 feet it was still a dangerous proceeding. The master of the barge, after testifying that the tug passed within about 16 or 18 feet of the Inlet pier and that it was imprudent to pass so near, testified as follows:

"The barge was from 200 to 225 feet below this inlet. I went upon the quarter and aft of the wheel; the man at the wheel, Bolcom, told me that they

had motioned to him from the tug, twice, and I told him to keep her in behind the tug. The vessel was at that time headed on the starboard quarter of the tug. By the time he had the vessel steadied up behind the tug, we were up within about 60 to 70 feet below this inlet. We appeared to be then headed to about 12 to 15 feet outside the Inlet pier, somewheres that way, and she kept sagging towards the wall; the current kept setting her in, and I gave the man at the wheel orders to keep his wheel a-port, and keep her out; and that did not seem to clear her, and in order to keep her stern out, I told him to starboard the wheel which he did. Then she struck the lower corner of the Inlet pier."

In other words, the master of the barge, knowing that the tug was towing his vessel so carelessly that she must pass within a few feet of a projection which extended out into a swift and treacherous current, gave an order when only 200 feet distant which threw the head of his vessel directly towards the impending danger. If it were negligent in the tug to give such an order it was negligent in the barge, with the danger so manifest and so near, to obey it. The master of the barge cannot shield himself, therefore, upon the theory that he was called upon under all circumstances to obey the orders from the tug. The danger was so imminent that common sense and common prudence admonished him to postpone obeying the order at least until after the Inlet pier was passed. As one of the witnesses expresses it, "A man has got no business doing such a thing, when he sees himself getting into danger he should use his own judgment and keep out of there." Starboarding, porting and starboarding again in quick succession in such circumstances was clearly bad seamanship and undoubtedly contributed to produce the accident. The Margaret, 2 Fed. 255. The situation is somewhat similar to that of The Nettie, 35 Fed. 615. The libelants are entitled to a decree for half damages and costs and a reference to compute the amount.