## THE MARTIN DALLMAN.

### DENTY v. THE MARTIN DALLMAN.

(Circuit Court of Appeals, Fourth Circuit. November 16, 1895.)

### No. 133.

1. COLLISION—VESSEL AT WHARF—LIGHTS.

A vessel moored to a wharf at the side of a river channel 200 feet wide is not within the provision requiring vessels "anchored or moored in the channel or fairway of any bay, harbor or river" to maintain a light. Rev. St. § 4233, rule 12.

2. SAME—TUG AND TOW WITH VESSEL AT WHARF.

A tug rounding the corner of a wharf from a channel 200 feet wide into a channel 70 feet wide, on a clear starlit night, with two tows on hawsers, *held* in fault for collision of the last tow with a schooner moored at the wharf and having no light, where on the weight of the evidence it was found that the schooner did not project beyond the corner of the wharf so as to occupy any part of the channel, and that the last tow would have struck the corner of the wharf even if the schooner had not been there. Seymour, District Judge, dissenting on the ground that, on the evidence, the schooner did project some distance beyond the wharf, and in that position was bound to have up a light.

Appeal from the District Court of the United States for the Eastern District of Virginia.

This was a libel by Silas Denty against the steam propeller Martin Dallman to recover damages for a collision. The court below rendered a decree dismissing the libel, and libelant appealed.

A. W. Armstrong, for appellant.

B. F. Leighton, for appellee.

Before GOFF and SIMONTON, Circuit Judges, and SEYMOUR, District Judge.

GOFF, Circuit Judge. Silas Denty, owner of the schooner William D. Clark, filed a libel against the steam propeller Martin Dallman for damages done his schooner by a collision. The schooner Clark was lying at the arsenal wharf at a point where the channel was fully 200 feet wide. The tug Dallman, with a tow of two barges, was endeavoring to turn the corner of the wharf and enter the channel of James Creek Canal, which was 70 feet wide. The schooner was moored to the wharf with her bow to the east, and with her stem not much, if any, beyond the east end of said wharf. The night was not very dark; there was no fog and no wind; the moon was not shining, but the stars were. The schooner was at the wharf unloading her cargo of wood; was at a place where she had a right to be. She displayed no lights. The collision happened by the rear barge of the tow being caught by the rigging of

the spar of the schooner. The jib stay and hogchain of the schooner were broken, the rigging carried away, stem damaged, and the hull so strained as to require recalking. The appellant contends that the collision was caused by the negligence of the master of the Dallman, while the appellees, her owners, insist that it was because of the schooner's being improperly moored at an improper place, and also because she had no lights up. The district court sustained the contention of the respondents below, and dismissed the libel.

We do not find that the Clark was improperly fastened to the wharf. In our opinion the decided weight of the evidence shows that her stern was west of the west end of the wharf, and her bow at the east end, around which the Dallman attempted to turn in order to enter the James Creek Canal. The testimony is clear that the schooner was moored out of the way of vessels going into James Creek Canal, before it was fastened to the wharf for the night. In saying this we are not unmindful of the testimony of those on the tug and the barges, but, under the circumstances and excitement attending the collision, they had not the opportunity for observation or the means of information, relative to the position of the schooner, as did those who moved and moored it. If the master of the Dallman was unable to prevent the accident because he did not see the Clark until he was almost on her, as he in effect testifies to, it is hardly likely that he would be able to state with accuracy the particular spot she occupied before the collision occurred. It was also shown by the evidence of the master of another vessel that he on the same evening, while the Clark was so fastened to the wharf, took his vessel into the James Creek Canal, passing by the schooner without trouble, and that in his opinion she was so moored as not to be in the way of vessels going up the river.

Finding as we do that the Clark was properly fastened at a place where she had a right to be, we now proceed to consider the question whether or not she was required, under the laws and regulations in such cases applicable, to display a light at the time she was so moored. That she had no light is conceded. Under the circumstances, moored to the wharf, not being in motion, we are not aware of any statute which requires her to have a light. We do not think that rule 12 of section 4233 of the Revised Statutes of the United States applies to vessels situated as the Clark then was. She was not "anchored or moored in or near the channel or fairway of any bay, harbor or river," in the true meaning of said rule, but she was fastened or moored alongside of a wharf, with at least 200 feet of clear water outside, between her and the outer edge of the channel. But, if the law did require that the Clark should have displayed a light, does it follow that the Dallman, under the evidence in this case, was not to blame for the collision? Certainly not. The schooner was helpless,—was tied to the wharf; and great caution was therefore required on the part of the steam tug when she endeavored to turn with her tow into the channel of James Creek Canal. As we see the evidence, instead of being unusually cautious, she was extremely reckless. If the master of the tug did not see the schooner, he knew where the wharf was, and he was

aware of the fact that it was constructed for the purpose of having vessels stop at it, and approaching it as he was, in the nighttime, and with the purpose of turning around its eastern end, he should at least have exercised more prudence than he did. We think that the collision was caused by the negligence of the master of the tug, and that his carelessness was fully shown by his own testimony. He says that he saw the Clark at the wharf when he was about two lengths from her, and that he passed on until he judged that everything was clear, when he "rang the bell to go ahead." He should have known certainly that he was clear of the wharf before he gave the signal "to go ahead," which in this instance meant turning into James Creek Canal. He admits that if the schooner had not been where she was the second barge of his tow would have struck the wharf. This was certainly negligence on his part. We think that the testimony shows that the master of the Dallman really observed the Clark in due time, as did also his engineer (who says that he saw the schooner at the wharf when he "was some distance from her"), and we find that the master made the mistake, on account of which the collision occurred, in miscalculating the distance required in which to make the turn around the schooner into the channel of James Creek Canal. He provided for his vessel and one of the barges of his tow, but not for the other. We can see no reason for concluding that the absence of a light on the Clark contributed in any way to the collision. The light would have imparted no additional information to the officers of the Dallman, for they had seen the Clark, and they supposed that their tow had safely passed her, and so believing they went ahead. Again, if the master of the tug, because of the position of the schooner, found any difficulty in making the turn and entering the James Creek Canal, even though a light was required and the schooner had none, he should have stopped, if that was possible, and it seems that he did stop as soon as he heard the crash of the collision. In our opinion he did not exercise even ordinary care, when the situation was such as to demand unusual caution. He had at least 200 feet of the Eastern Branch channel and 70 feet of the James Creek channel within which to make his turn, and yet he passed so close to the schooner that, according to his own testimony as well as that of several other witnesses, the last barge would have struck the corner of the wharf, had it not hit the Clark. That this was bad seamanship is manifest. The supreme court of the United States in The Granite State, 3 Wall. 310, says:

"It is not controverted that the barge, which was fastened to the end of the pier, was in a place she was entitled to occupy; that she was not required to have a light suspended during the nighttime, as vessels anchored in the channel are required, nor to have a watch kept on board to wave off steamboats using the channel of the river. She was not on any track the steamer was required to take, and, being incapable of motion, cannot be justly charged with any participation or fault in causing the collision. As in the case of The Louisiana, recently decided (3 Wall. 164), there was no unusual convulsion of the elements or sudden hurricane which nautical men could not anticipate; no vis major causing a collision which a proper display of nautical skill might not have prevented. Under such

circumstances we are not called upon to inquire wherein the steamboat was not managed with proper nautical skill; whether the bright light which the steamboat had, or ought to have had, was not sufficient to warn her in time of her proximity to the pier if careful watch had been kept; whether she should not have backed her engine instead of rushing forward; whether she should have ported or starboarded her helm. All these inquiries are superfluous where the collision was caused by a vessel having the power to move or stop at pleasure in a channel of sufficient breadth, without any superior force compelling her to the place of collision. The fact that in those circumstances the steamboat did collide with the barge is conclusive evidence that she was not properly managed, and that she should be condemned to pay the damages caused by the collision."

For the reasons given we think that the decree appealed from should be reversed, and the cause remanded, with directions to enter a decree in favor of the libelant for the damages caused by the collision complained of, and it is so ordered.

SEYMOUR, District Judge. I do not concur in the opinion of the court in this case. The schooner was lying at the Arsenal wharf on the north side of the east branch of the Potomac river. The propeller was towing two barges up the river, and was rounding the corner of the wharf to enter a channel 70 feet wide, and of about the same length, that leads from the river to the mouth of the canal. This channel runs from the side of the wharf, so that a vessel projecting beyond the east side of the wharf is, to the extent of her projection, in the channel. The time was about 9 p. m.; the night was dark, without moon, but with starlight and occasional clouds. The channel to the mouth of the canal lies at about right angles to the river. The tug passed the schooner, as did one of her tows. The second tow struck the forward part of the schooner, and did the damage complained of. It is a controverted point whether the bow of the Clark projected beyond the center of the wharf into the channel of the stream. I see no reason to doubt the testimony of those on the propeller, confirmed as it is by that of the two soldiers from the arsenal, to the effect that, including her bowsprit, the Clark projected considerably into the river, and that not only the 15 feet of the bowsprit, but probably about 15 feet more of the boat, did the same. Under these circumstances I concur in the conclusion of the court below that it was the duty of the schooner to have had a light up, and that as she had none she was in fault. I also concur in the opinion of the learned judge that the tug was not in fault. It was at best a matter of some nicety to make the turn with the tide setting in upon the corner of the wharf, and to align the 175 feet length of tug and tows at right angles with the main channel of the river in the 70 feet channel running towards the canal. When the darkness of the night, and the fact that the schooner projected across a considerable part of the channel, showing no light, are considered, I do not find it difficult to believe the statement of the captain of the tug that he did not see the Clark until too close upon her to avoid a collision. Nor do I think that he failed to see her by reason of carelessness.