### THE MILLVILLE.

### THE PEARL.

(District Court, D. New Jersey. May 9, 1905.)

COLLISION—VESSEL MOORED IN FAIRWAY OF STREAM—FAILURE TO CARRY LIGHTS.

Article 29 of the inland navigation rules (Act June 7, 1897, c. 4, 30 Stat. 102 [U. S. Comp. St. 1901, p. 2884]), which provides that "nothing in these rules shall exonerate any vessel * * * from the consequences of any neglect to carry lights or signals, or of any neglect to keep a proper lookout, or of the neglect of any precaution which may be required by the ordinary practice of seamen, or by the special circumstances of the case," applies to a vessel lying moored at the end of a wharf, in a dark night, in the navigable part of a narrow stream, constantly traversed by different kinds of craft, and having neither lights nor a lookout, there being special circumstances in such case which required her, in the exercise of common prudence, to carry a light, whether or not it was expressly required by the rules; and she cannot recover for an injury by collision with a passing vessel in tow, which could have been avoided, had she been properly lighted.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Collision, §§ 223–227.]

In Admiralty. Suit for collision.

Samuel H. Richards, for libelant.

Willard M. Harris, for claimants.

LANNING, District Judge. This case has been reargued on the application of the libelant, after the filing of an opinion that the libel should be dismissed. The steam propeller Elsie Weatherby on Saturday night, August 23, 1902, was tied fast to Weatherby's Wharf, in Old Man's creek, Salem county, N. J., heading up the stream, to remain there for the night. About 9 o'clock in the evening the steam tug Millville, with the barge Pearl in tow, was passing down the stream by the Elsie Weatherby, when the barge collided with the Weatherby, knocking a hole in her port bow. This suit is brought for the recovery of the damages sustained, and also for the loss of the use of the Weatherby while she was undergoing repairs. One of the allegations contained in the libel is that the Weatherby was lying "in a proper and lawful place for her to be, with all the lights and lookouts required by law." In the answers filed by the claimant of the tug and the claimant of the barge, it is declared that "on the night in question the steam barge Elsie Weatherby, being deeply loaded, was moored along said bulkhead so as to lie directly in the channel or fairway, without lights or lookouts." Much testimony was taken on the question as to whether the Weatherby was provided with lights, and in the first argument by counsel much was said on the same question. A rule of the board of supervising inspectors of steam vessels, adopted February 8, 1899, and printed in the pilot rules issued by the Department of Commerce and Labor in 1904, is as follows:

"Resolved, that all coal boats, trading boats, produce boats, canal boats, oyster boats, fishing boats and other water craft navigating any bay, harbor

or river, propelled by hand power, horse power, sail, or by the current of the river, or which shall be moored in or near the channel or fair-way of any bay, harbor or river, shall carry one bright white light forward, not less than six feet above the rail or deck."

Article 11 of "An act to adopt regulations for preventing collisions upon certain harbors, rivers, and inland waters of the United States," approved June 7, 1897, c. 4, 30 Stat. 98 [U. S. Comp. St. 1901, p. 2879], provides that:

"A vessel under one hundred and fifty feet in length when at anchor shall carry forward, where it can best be seen, but at a height not exceeding twenty feet above the hull, a white light, in a lantern so constructed as to show a clear, uniform, and unbroken light visible all around the horizon at a distance of at least one mile."

And article 29 of the same act (30 Stat. 102 [U. S. Comp. St. 1901, p. 2884]) provides that:

"Nothing in these rules shall exonerate any vessel, or the owner or master or crew thereof, from the consequences of any neglect to carry lights or signals, or of any neglect to keep a proper lookout, or of the neglect of any precaution which may be required by the ordinary practice of seamen, or by the special circumstances of the case."

I adhere to the opinion previously expressed, that the Weatherby was not provided with signal lights at the time of the collision. But it is urged now, for the first time, by the libelant, that article 11, above quoted, is not applicable to a vessel moored at the end of a wharf, and that the Weatherby was under no obligation to carry lights of any kind. I think this contention cannot be sustained. The evidence shows to my satisfaction that the Weatherby was moored in the navigable part of the creek. At that point the creek was not more than 110 feet in width from low-water mark to low-water mark. The navigable portion must be considerably less in width. Assuming that neither article 11 of the act of June 7, 1897, c. 4, 30 Stat. 98 [U. S. Comp. St. 1901, p. 2879], nor the rule of the board of supervising inspectors adopted February 8, 1899, is applicable to this case, I think the position of the Weatherby in the stream, which the testimony shows is much traversed by trading vessels, was one which, by a fair construction of article 29, above quoted, required her to carry a light. There were "special circumstances" in her case, growing out of the fact that she was moored at the end of the wharf on a dark night, in the navigable part of a narrow stream constantly traversed by different kinds of water craft. In my judgment, these "special circumstances" distinguish the case from The Granite State, 3 Wall. 310, 18 L. Ed. 179, The Dean Richmond, 107 Fed. 1001, 47 C. C. A. 138, and The Martin Dallman, 70 Fed. 797, 17 C. C. A. 419, to which my attention has been directed. In The Kennebec, 108 Fed. 300, 47 C. C. A. 339, a vessel moored in the channel of a river, without lights or signals, was held to be liable for a collision, notwithstanding it was there objected that the statute did not require her to have lights or signals. But the court said:

"Even so, common prudence demands that ships appropriating a quarter or a third of a channel should use care to employ adequate means to make their presence known."

The facts of this case lead me to the same conclusion before reached, and there will be a decree that the libel be dismissed, with costs.