### THE CHAUNCEY M. DEPEW.

#### (District Court, S. D. New York. May 13, 1904.)

1. COLLISION—VESSEL LYING AT END OF PIER—NEW YORK STATUTE.

The New York statute prohibiting vessels from lying at the end of a pier in the North or East river, and providing that "any vessel * * * so lying shall not be entitled to claim or demand damages for any injury caused by any vessel entering or leaving any adjacent pier," is penal in character, and is not to be extended by construction; and the exemption from liability it gives extends only to injuries to a vessel so lying which result from her obstructing the entrance to an adjacent pier. Where a canal boat lying at the end of a pier in East river headed to the northward was struck on the bow and injured by a barge in tow alongside a tug, which the tug was intending to leave at the end of the pier to be worked around to the south side by hand, the statute affords the tug no protection from liability.

In Admiralty. Suit for collision.

James J. Macklin, for libellant.

Butler, Notman, Joline & Mynderse, and Archibald G. Thacher, for claimant.

ADAMS, District Judge. This action was brought by the libellant, Thomas A. Quigley, to recover the damages sustained by reason of

collision between his canal boat William S. Deyo, about 100 feet long, and the barge Sharon, in tow of the steamtug Chauncey M. Depew, on the 15th of May, 1903, about 10:30 o'clock P. M. The canal boat was lying, duly lighted, outside of three other boats, at the foot of 91st Street, East River, waiting to be picked up by a tug and towed away. The Depew, with the barge Kingston and, outside of her, the barge Sharon, on the starboard side, and the Rhinebeck, on the port side, was taking the Sharon to 91st Street, intending to leave her there.

There is some controversy with respect to the Deyo's position at the pier, it being contended by the libellant, that she was lying headed to the northward, with her starboard side away from the pier, and by the claimant, that she was lying headed to the southward, with her port side away from the pier. The preponderance of the testimony supports the libellant's claim in this respect and I conclude that the boat's starboard side was exposed to contact with vessels approaching the pier. The Deyo's starboard bow was driven in and she was more injured by the collision than would have resulted from an ordinary contact of navigation. The tug was, therefore, in fault.

It remains for consideration, whether the tug can find exemption from liability under the provisions of chapter 378, § 879, p. 314, Laws N. Y. 1897, which provides:

"It shall not be lawful for any vessel, canal boat, barge, lighter or tug to obstruct the waters of the harbor by lying at the exterior end of wharves in the waters of the North or East river, except at their own risk of injury from vessels entering or leaving any adjacent dock or pier; any vessel, canal boat, barge, lighter or tug so lying shall not be entitled to claim or demand damages for any injury caused by any vessel entering or leaving any adjacent pier."

The tug was taking the Sharon to 91st Street, intending to leave her, for discharge of her cargo of hay, etc., on the south side. The tide was flood. In the slip to which the boat was bound, the water is shoal, there not being enough for tugs to go in. The usual method of putting a boat in there, is to take her to the end of the pier, have her get a line out and then give her a start around to the side, from which point she would be worked in by hand. On this occasion, the tug came up the river, rounded to in the Gate, then headed down and worked the boat in, intending to put her against the end of the pier, but while rounding to, the master of the tug found it was occupied. The master of the barge asked the master of the tug to land him alongside of a boat lying on the south side of the pier but the latter replied: "You will have to land on the end."

It is evident that the Sharon was bound, for a brief time at least, for the end of the pier and the question to be determined is, whether the tug is exempted from the liability, which would attach to her for negligent navigation in bringing her tow too violently in contact with this stationary boat, by reason of the statute.

In the several times this statute has been under consideration in the admiralty courts, it has been held that the statute did not absolve the moving vessel from liability. The F. W. Devoe (D. C.) 94 Fed. 1019; The Cincinnati (D. C.) 95 Fed. 302; The Dean Richmond (D. C.) 103 Fed. 701, affirmed 107 Fed. 1001, 47 C. C. A. 138; The Buenos Aires

(D. C.) 119 Fed. 493. In The Cincinnati, Judge Thomas said (page 304):

"The Cincinnati was not 'entering or leaving any adjacent dock or pier.' The Fletcher was obstructing Starin's slip to the south, but the Cincinnati was not seeking to enter that slip, and her entrance thereto was not anticipated, nor had she any right therein. The statute undoubtedly intends to prevent the use of piers forming the boundaries of slips to or from which another vessel seeks entrance or exit. A vessel in passage may not rake a ship lying at the end of a pier in the river, and exculpate itself from responding therefor upon the ground that it was making its way in a fog and trying to find and enter its proper slip, and that the injured ship was at the end of the pier, in violation of the statute. A broader view of .the statute than that here adopted is inconsistent with its words and spirit, and incompatible with the necessities of the port, which the legislature may be presumed to have considered."

In The Dean Richmond, on appeal, Judge Wallace, referring to the statute, said (page 1002, 107 Fed., page 139, 47 C. C. A.):

"We think it to be the meaning of the statute to subject vessels lying at the end of piers to all risks of injury caused by other vessels in entering or leaving the docks next adjacent thereto. As it is in the nature of a penal statute, it is not to be extended to cover cases which are not clearly within its terms." * * * "The statute does not say in terms that the offending vessel shall assume the risk for all injuries caused by any vessel entering any dock or leaving any pier adjacent to that at which the offending vessel is lying, and there is room for interpreting it as meaning that she shall assume all risk for injuries from vessels entering or leaving any dock or pier adjacent to the offending vessel. It has been held in several adjudications that a vessel so moored at the head of a pier as to obstruct the proper navigation of another vessel in making her entrance to, or exit from, her dock or wharf, as where she is not lying abreast the pier, or her bow or stern project across the dock, infringes on the privileges of the other, and is responsible for the damages caused by a collision, if the other vessel has exercised due precautions. The Canima (C. C.) 32 Fed. 302; The Etruria (D. C.) 88 Fed. 555; The Martino Cilento (D. C.) 22 Fed. 859. The purpose of the present statute would seem to remove all controversy in such a case in respect to the extent of the obstruction caused by the manner in which the vessel is moored, and in respect to the navigation of the vessel whose privilege has been infringed. A broader view of the statute is incompatible with the necessities of the harbor, which the legislature may be presumed to have considered."

The barge here though ultimately bound for the south side of the pier, was at first bound for the end of the pier and collided when endeavoring to reach the latter position. She was not strictly, therefore, "entering or leaving any adjacent dock or pier," but going to the end of the pier and attempting to do what is sought to be interposed here as a barrier to recovery. The case is not clearly enough within the terms of the statute to justify the allowance of its interposition.

Moreover, the collision, though with a vessel at the end of the pier, was not at a part of the moored vessel which in any way interfered with the moving vessel's course in obtaining the position she ultimately sought. The contact was with the bow of the moored vessel, which the testimony shows was entirely out of the way of the moving vessel in going to the lower side of the pier and the latter's privilege was obviously not infringed. The master of the tug testified, on cross examination, referring to the Deyo:

"Q. You could have avoided her easy enough, that is, so far as that part is concerned, between 20 feet aft of her bow and stern, assuming her stern

pointed up stream. Is that right? It was only necessary for you to touch that part in making your landing of the barge, 20 feet abaft of the bow? A. That is all."

The Deyo was lying at the end of the pier, waiting to be towed away, and got the best position she could. The captain testified:

"Q. Why were you not put in the slip there? A. Because we couldn't get in there. The tug claims he couldn't put me in there on account of the low tide, one side; on the low tide, the captain said he couldn't get in there. The other side they were unloading ice and wouldn't let us lay there."

I do not think the circumstances of this case will justify denying the allowance of the damages the libellant is entitled to recover by the admiralty law.

Decree for the libellant, with an order of reference.