## THE C. VAN COTT.

(District Court, S. D. New York. February 19, 1907.)

1. TOWAGE—LEAVING TOW AT END OF PIER IN EAST RIVER—LIABILITY OF TUG FOR INJURY OF TOW IN COLLISION.

A tug was chartered to tow a canal boat to a certain pier in East river, where she was to be shortly picked up by another tow and taken to her place of loading. On reaching the pier she was placed at the end of the same outside of three other boats also waiting for the same tow, where she remained in violation of the state statute until she was injured in a collision with another vessel. The evidence tended to show that the position was a convenient one from which to be picked up by the other tow, and that the master made no objection to the place, and the master of the tug testified that if objection had been made he would have placed her elsewhere. *Held*, that the tug was not in fault and could not be charged with liability for the damages resulting from the collision.

In Admiralty.

James J. Macklin and La Roy S. Gove, for libellant.
Alexander & Ash, for claimant.

ADAMS, District Judge. This action was brought by Thomas A Quigley, the owner of the canal boat William S. Deyo, to recover half of the damages sustained in consequence of a collision between the Deyo and a boat in tow of the steamtug Chauncey M. Depew on the 15th of May, 1903. In the first instance all of the damages were sought to be recovered from the Depew and this court allowed a full

recovery. The Chauncey M. Depew (D. C.) 130 Fed. 59. On appeal, the recovery was reduced to one half on account of the Deyo lying at the end of the pier in contravention of the Laws of New York prohibiting vessels from so lying, 139 Fed. 236, 71 C. C. A. 362. The Van Cott towed the Deyo to the pier where she was injured and left her there.

The principal allegations of the libel are:

"Third: That on or about the 15th day of May, 1903, the said Propeller C. Van Cott for a valuable consideration took the said Canal boat William S. Deyo in charge to be towed to a place of safety to wait for the towing tug of the Port Reading tow; that the said Propeller C. Van Cott took the said canal boat in tow on the afternoon of that day and illegally and unlawfully left her at the end of the pier at 91st Street East River outside of three other boats which were lying at the said pier contrary to the provisions of the Statutes of the State of New York; that said canal boat was permitted to lie at the end of said pier till the evening of said day when the said canal boat was struck and seriously injured by a barge in tow of the Steamtug Chauncey M. Depew.

Fourth: That by reason of being left to lie at the end of said pier illegally and unlawfully by the said Propeller C. Van Cott the libellant was able to recover only one-half of his damages as aforesaid against the said Steamtug Chauncey M. Depew and the same was so decided by the United States Circuit Court of Appeals in an action by the libellant against the said Steamtug Chauncey M. Depew to recover the damages aforesaid."

The principal allegations in the answer are:

"Third: Claimant, upon information and belief, answering the third article of said libel admits that on the 15th day of May, 1903, the steamtug 'C. Van Cott' left the canal boat 'William S. Deyo' at the end of the pier at the foot of 91st Street, East River, outside of three other canal boats. That the master of said canal boat carelessly and negligently permitted her to remain there during the succeeding night until she was struck by a boat in tow of the tug 'Chauncey M. Depew'; and denies each and every other allegation contained in said article.

Seventh: On the afternoon of the 15th day of May, 1903, the steamtug 'C. Van Cott' was hired by the libellant to tow the canal boat 'William S. Deyo' from Astoria to the end of the pier at foot of Ninety-first Street, East River and leave her there for the Port Reading tow. Said canal boat at said time was light and was bound for a loading berth in the State of New Jersey. The northerly side of said pier is occupied by an ice company and vessels are not permitted to land there. On the southerly side the water is shallow, so it is not safe for tugs to enter the slip on that side of the dock. It is usual and customary for vessels bound for the Port Reading tow to be left temporarily at the end of the wharf, so that they can be readily taken in tow and brought to their destination by the tugs of said towing company. The Van Cott reached said place with said canal boat at about 6 P. M. The tide at the time was low water ebb and the weather clear. On her arrival she found three vessels were made fast abreast of each other at the outer end of the pier also waiting for the Port Reading tow, and the steamtug Van Cott, at the request of the master of said canal boat, made the Deyo fast outside of said vessels, and left her there in safety. It was the expectation at the time that she would be shortly picked up by the said Port Reading tow and taken thence to her loading berth. Said tug performed her said services carefully and properly in accordance with its contract with the master of said canal boat, and her bill for services was approved and paid.

Eighth: The damages complained of in the libel were not caused by or through any fault or act of negligence of said steamtug, but were caused by the fault and negligence of said canal boat in remaining during the night in her berth and in not hauling alongside of the southerly side of the pier which she could readily have done."

Considerable evidence has been adduced in the matter and it tends to support the respective claims. There is more than the usual conflict.

The only writings which would afford any aid in the solution were a towing bill and a book of the charterer of the Deyo. The bill, which was signed by the master of the Deyo, purported to show a charge due the Van Cott for towing the Deyo from Astoria to 96th Street, but the "6" showed indications of having been altered from some other figure and the bill taken altogether is not of much use. The entries in the book of the charterer were so much mixed up, without any adequate explanation, that they are of the same character and entitled to little credence. The master of the Deyo testified that he engaged the Van Cott in Astoria to tow him to 96th Street but was taken to 91st Street and that he objected to having his boat left on the outside of the other boats at 91st Street, nevertheless the Van Cott did so leave her. It does not appear that the master of the Deyo interposed any objection to the place.

The witnesses on behalf of the Van Cott were principally her master and deck hand, who were at the time of the trial in other employ. They said in substance that the Deyo was taken in tow at Astoria and left at the end of the pier pursuant to instructions received from the tug's office; they found three other boats waiting for the same tow at the end and placed the Deyo outside of them. The man in charge of the office said that the order to tow came there from the charterer by telephone to take the Deyo to the foot of 91st Street. The tug's witnesses said that they left her where they did without objection and it was a proper and convenient place for the boat to be picked up by the Port Reading tow, which the boat desired, but they would have placed her elsewhere if the master had asked.

The case has been warmly contested throughout. The burden of proof was of course upon the libellant and it has not sustained it. On the contrary, the testimony shows that the tug was not in fault in any respect.

The libel will be dismissed.