## The Martino Cilento, etc.

*(District Court, S. D. New York.    January 5, 1885.*

1. Maritime Lien—Limitation of Actions—Stale Claims.

   Where no claims of subsequent purchasers, lienors, or incumbrancers are involved, a maritime lien for damages will not be deemed stale or barred by lapse of time, through a delay of two years in filing the libel, merely on the ground that some witnesses have in the mean time been lost by the respondents.

2. Collision at Pier—Projecting Boat.

   Where a bark fastened to spiles along a bulk-head within the slip was sought to be pulled out of the slip astern, but owing to some neglect in clearing her head-lines her bows stuck fast and her side was swung round by the tide so as to collide with and injure the libelant's boat, which projected about 30 or 40 feet across the end of a short pier a little outside of the bark, *held*, that the bark was wholly at fault, and the projection beyond the end of the pier was not, under the circumstances, negligence in the libelant.

In Admiralty.

*J. A. Hyland*, for libelant.

*Ullo, Ruebsamen & Hubbe*, for claimants.

Brown, J.  On the thirtieth of April, 1881, the libelant's canal-boat Manitoba was lying across the end of a short pier at the foot of

Pearl street, Brooklyn, her bows projecting some 30 or 40 feet below the end of the pier. The bark Martino Cilento had been lying in the slip immediately below, along-side the bulk-head, her bows being up river and near to the corner formed by the projection of the short pier, and therefore lapping somewhat the bows of the Manitoba, and but a short distance inside of her. For the purpose of moving the bark out into the stream, a steam-tug had attached a hawser to her stern; and upon a signal from those on board the bark, the steam-tug started up to pull her astern and out into the river, but through some mistake the bow-lines of the bark were either not cast off, or got caught upon the spile at her bows, and before she could get clear her side was swung upward by the tide against the libelant's boat and did some damage, for which this suit is brought.

The libel was not filed until April 17, 1883, nearly two years after the injury. By that time nearly all the persons who were on the bark at the time of the accident were beyond the reach of the vessel. The first mate, who was present at the time, was, however, procured and examined. While, under such circumstances, the libelant's evidence must be rigorously scrutinized, and interpreted against him on all doubtful points, and while some of the testimony presents points for criticism, I cannot, on the whole, doubt that some injury was caused to the libelant's boat; and that it arose wholly from the fact that the bow-line of the bark was not properly cast off, and that the bark must be held liable, therefore, for her negligence in this respect.

It is urged that the claim should not be entertained, on account of the lapse of two years before the libel was filed, most of the bark's witnesses in the mean time having passed beyond reach. It is shown that the bark during these two years had been in New York four different times, remaining from two to three weeks each time, and that the libelant, therefore, had opportunity to commence his suit earlier. For the libelant, it is shown that quite soon after the damage arose he placed his claim in the hands of his proctors, who reported to him that they were unable to find the bark; that he was afterwards absent from the state about a year; and that he caused the arrest of the vessel upon her first arrival here that became actually known to him. I do not know of any precedent for holding, nor do I think it would be reasonable to hold, that a claim is barred under such circumstances for no other reason than the possible loss of some testimony that might have been obtained by the respondents if the suit had been brought sooner. There has been no change in the ownership of the vessel, and there is no question of priority as respects subsequent lienors. In a suit *in personam* the owners would clearly be liable; and any loss or inconvenience through the difficulty of procuring all the evidence they might desire would be felt as much in a suit *in personam* as in this suit *in rem*. The difficulties arising from the partial loss of testimony through the discharge of seamen are of constant occurrence in admiralty causes; but these difficulties alone have never been

deemed a sufficient ground for limiting a libelant's lien to the period of his first or second opportunity of enforcing it. The cases cited by the claimant's counsel turn wholly upon the equities of subsequent purchasers or subsequent incumbrancers, and manifestly rest upon a wholly different principle. The case of *The Columbia*, 13 Blatchf. 521, illustrates the distinction. There, in a case of laches much greater than this, where there was no excuse for a delay of three and one-half years before the libel was filed, the libelant's claim was postponed to the intervening *mortgage*, but was sustained as against the owners, and a decree *in personam* rendered against them. See *The Bristol*, 11 FED. REP. 156, 163, and cases there cited.

There is no sufficient evidence to charge the canal-boat with negligence contributing to the damage. She was discharging, as is to be inferred, in the ordinary manner, by lying across the end of the pier; and, in order to discharge from her after-hatch, the boat had to be brought down so that her bows projected some 30 or 40 feet below the line of the pier. When the bark was about to be moved out by the tug, the circumstances of the situation were not such as to indicate any danger to the canal-boat, or naturally or reasonably to call upon her to remove from her position. That this was understood by both is to be inferred from the fact that no notice was given by the bark that she was about to remove, or that any further precautions were required on the part of the canal-boat. There was, in fact, plenty of room for the bark to be pulled out astern in the mode attempted, and no injury would have happened had the lines been properly cast off. The case is wholly different, therefore, from that of *The City of Paris*, 14 Blatchf. 531, where the tug-boat had notice of danger to herself, was improperly secured, and, by her own change of position, contributed to the collision. It is equally unlike the cases of *The Canima*, 17 FED. REP. 271, and *Shields* v. *The Mayor*, 18 FED. REP. 748, where the bows projected beyond the pier at which steamers were accustomed to land. Decree for the libelant, with costs.