## THE DEAN RICHMOND.

### (District Court, E. D. New York. July 16, 1900.)

1. COLLISION—MOVING AND MOORED VESSELS—PRESUMPTION OF FAULT.
   A collision between a moving vessel and one moored raises a presumption of fault on the part of the moving vessel which imposes upon her the necessity of explanation of the presumed culpability.

2. SAME—VESSEL LYING AT END OF PIER—NEW YORK CHARTER PROVISION.
   Section 879 of the New York City charter, relating to the mooring of vessels at the ends of piers, does not relieve a moving vessel from liability for collision with a vessel so moored, which did not unduly obstruct navigation, and where the moving vessel was not seeking entrance to an adjoining slip.

In Admiralty. Suit for collision.

Wilcox, Adams & Green, for libelant.
William P. Prentice, for claimant.

THOMAS, District Judge. At about half past 6 o'clock on the morning of June 27, 1899, the canal boat H. A. Peck was made fast outside the canal boat Ada, which was lying abreast of pier 33 in the North river. The Peck had been in this position about half an hour, and was awaiting an opportunity to find a berth in the slip of which such pier was the southern boundary. The slip between piers 33 and 32 is 98 feet wide, pier 32 is 64.89 feet wide, the slip between piers 32 and 31 is 171 feet wide; making a total distance of 333.89 feet from the south side of pier 33 to the north side of pier 31. The Peck was about 17 feet wide, and the Ada was about 20 feet wide, so that together they occupied 37 feet of the water way adjoining the head of pier 33. The stern of each boat projected somewhat, but not considerably, into the slip south of pier 33. The Dean Richmond, a steamboat 375 feet long, plying between Albany and New York, on the date and at the hour named passed the Peck, and approached the northwest corner of pier 31, with the intention of casting a line from her bow to such point on such pier, which line should be carried to the stern of the Richmond, for the purpose of working the vessel ahead, and thereby drawing her stern into the slip. Before the line was made fast and the boat worked forward, the stern of the Richmond, which she claims was 75 feet away from the Peck, drifted rapidly towards the Peck, striking the stern of the latter boat, and producing the injury for which the owner of the Peck files the present libel. There is evidence that it was not an unusual thing for boats to lie at rest at pier 33, and that the Richmond had found boats in that position, but that she had been so managed as to escape collision with them; and it is contended that

all suitable care was taken in the present instance, and that the collision was due to a very unexpected carrying of her stern towards the Peck on account of a sudden swirl of the ebb tide. It does not satisfactorily appear that there were any unusual conditions on the morning in question. The wind was light from the west, and there were no unaccustomed phenomena attending the ebb tide. It appears that the claimant was entitled to the use of the southern portion of the slip lying between piers 32 and 33, but it was her intention on the present morning to use the slip between piers 32 and 31. If the bow of the Dean Richmond were lying against the northwest corner of pier 31, her stern would be about even with the northern side of pier 33. Her evidence shows that she passed about 50 feet away from the outer side of the Peck. The captain of the Peck contends that the collision occurred while the Dean Richmond was passing, but the latter vessel insists that the accident arose in the manner above described.

Provided the Peck was rightfully in her position, a presumption of negligence against the Richmond arises from the fact of a collision with a moored vessel, and imposes upon the offending vessel the necessity of explanation of the presumed culpability. The Nellie, 7 Ben. 497, Fed. Cas. No. 10,093; The Mary Powell (C. C.) 36 Fed. 598; The Michigan (C. C.) 52 Fed. 501, 505; Henderson v. City of Cleveland (D. C.) 93 Fed. 844; The Canima (C. C.) 32 Fed. 302. The explanation given by the Richmond is that she used proper care, but that the sudden energy of the tide resistlessly drew the stern of the Richmond about, and produced the accident. This explanation does not appeal with much force to the court. She was accustomed to making her slip under similar circumstances. There was no unusual disturbance of the water, and the wind was slight. The failure to execute her wonted maneuver for the purpose of entering her slip on the present occasion was due, undoubtedly, to some error of calculation. It would be quite unsuitable to excuse a skillful pilot for his failure, under the present circumstances, to escape a boat lying at the end of a pier of which he was quite aware.

It is further urged by the claimant that the Peck was lying off the end of the pier, in violation of section 879 of the New York City charter, relating to the mooring of vessels at the ends of piers. Some construction of that statute was attempted by this court in The F. W. Devoe (D. C.) 94 Fed. 1019, and the Cincinnati (D. C.) 95 Fed. 302. In the latter case it was said, "The statute undoubtedly intends to prevent the use of piers forming the boundaries of slips to or from which another vessel seeks entrance or exit." The Richmond, in the present case, was not seeking entrance to a slip bounded by pier 33. In passing such pier she had the same, and no greater, rights than any other vessel. The Peck was authorized to lie where she did, and her act was neither wrongful nor was she guilty of any negligence contributing to the accident. It may be that it would be negligent for boats in too great numbers to lie one beside the other off the end of a pier, where there was considerable traffic, but the court is not prepared to say that two canal boats constitute an un-

due obstruction of the water way. The Dean Richmond had the same rights as any other vessel navigating the river. She may not justly claim greater privileges or considerations. She committed an act which, unexplained, condemns usual vessels, and her explanation is entirely unacceptable.

It is urged that it was the duty of the master of the Peck to move her from the end of the pier, so as to avoid the accident. But the advocate for the claimant emphatically states that the accident was unexpected, and it certainly happened without premonition, so far as the master of the Peck was concerned, and the case is not brought within The Etruria (D. C.) 88 Fed. 555. The libelant should have a decree for damages and costs.