### THE DEAN RICHMOND.

(Circuit Court of Appeals, Second Circuit. April 3, 1901.)

#### No. 103.

1. COLLISION—MOORED VESSEL.
   A presumption of negligence arises against a steamboat from the fact of a collision with a moored vessel, and imposes on the steamboat the burden of exonerating herself by exculpatory facts.

2. SAME—HARBOR REGULATIONS.
   Laws N. Y. 1897, c. 378, providing that it shall not be lawful for any vessels to obstruct the waters of a harbor by lying at the exterior end of the wharves, except at their own risk of injury from vessels entering or leaving any adjacent dock, does not relieve a moving vessel from liability for a collision with a vessel so moored, which did not unduly obstruct navigation, and where the moving vessel was not seeking entrance to an adjacent slip.

Appeal from the District Court of the United States for the Eastern District of New York.

W. P. Prentice, for appellants.

Herbert Green, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. We agree with the conclusions of fact and law expressed in the opinion of the learned district judge who decided this cause in the court below respecting the negligence of the steamboat. 103 Fed. 701. He was of the opinion that, unless the libelant's canal boat was not in a proper place, a presumption of negligence arose against the steamboat from the fact of a collision with a moored vessel, and imposed upon her the burden of exonerating herself by exculpatory facts, and that the evidence did not meet the burden thus imposed upon her. It is unnecessary

to recapitulate the evidence, or add anything to his opinion, and we shall pass to the more serious question which has been argued upon this appeal. At the time of the collision the steamboat was maneuvering to enter her slip on the North river, between piers 31 and 32, New York City, and the libelant's canal boat was lying temporarily at the exterior end of pier 33, outside, abreast, and made fast to another vessel, which was moored abreast the end of the pier. By chapter 378 of the Laws of the State of New York of 1897 (section 879), it is provided as follows:

"It shall not be lawful for any vessel, canal boat, barge, lighter or tug to obstruct the waters of the harbor by lying at the exterior end of the wharves in the waters of the North or East river except at their own risk of injury from vessels entering or leaving any adjacent dock or pier; and any vessel, canal boat, barge, lighter or tug so lying shall not be entitled to claim or demand damages for any injury caused by any vessel entering or leaving any adjacent pier."

As this statute was in force at the time of the collision, it is relied on in behalf of the steamboat as a complete defense to the action. The steamboat was not attempting to enter an adjacent dock, as pier 32 divided the dock she was intending to enter from the dock between that pier and pier 33. Although it has been customary for vessels to lie alongside the ends of the piers in the harbor of New York while discharging their cargoes, it has sometimes happened that their presence there has tended to embarrass the movements of other vessels in leaving or entering the docks on either side. It was undoubtedly competent for the legislature to prohibit such a use of the piers, in the interests of the general convenience and expediency. It was said of this statute in The Cincinnati (D. C.) 95 Fed. 302: "The statute undoubtedly intends to prevent the use of piers forming the boundaries of slips to or from which another vessel seeks entrance or exit." It was held in that case that the statute did not preclude a recovery by the injured vessel under a state of facts like those in the present case. We think it to be the meaning of the statute to subject vessels lying at the ends of piers to all risks of injury caused by other vessels in entering or leaving the docks next adjacent thereto. As it is in the nature of a penal statute, it is not to be extended to cover cases which are not clearly within its terms. It is very loosely expressed. First, it declares it not to be lawful for a vessel to lie at the end of the "wharves," except at her own risk as to vessels entering or leaving any adjacent "dock or pier"; and, secondly, declares that such a vessel shall not recover for injuries caused to her by other vessels entering or leaving "any adjacent pier." The second provision is superfluous, and no effect can be given to it, because it includes only what has already been adequately prescribed by the first. The words "dock" and "pier" are apparently used indiscriminately to mean the same thing. They are used alternatively in the first provision, while in the second the word "pier" alone is used, yet it is obvious that no distinction was intended in the two provisions. A vessel cannot enter a pier, yet the last provision uses the term "entering or leaving an adjacent pier,"

thus treating a pier as the same thing as a dock. The statute does not say in terms that the offending vessel shall assume the risk for all injuries caused by any vessel entering any dock or leaving any pier adjacent to that at which the offending vessel is lying, and there is room for interpreting it as meaning that she shall assume all risk for injuries from vessels entering or leaving any dock or pier adjacent to the offending vessel. It has been held in several adjudications that a vessel so moored at the head of a pier as to obstruct the proper navigation of another vessel in making her entrance to, or exit from, her dock or wharf, as where she is not lying abreast the pier, or her bow or stern project across the dock, infringes on the privileges of the other, and is responsible for the damages caused by a collision, if the other vessel has exercised due precautions. The Canima (C. C.) 32 Fed. 302; The Etruria (D. C.) 88 Fed. 555; The Martino Cilento (D. C.) 22 Fed. 859. The purpose of the present statute would seem to be to remove all controversy in such a case in respect to the extent of the obstruction caused by the manner in which the vessel is moored, and in respect to the navigation of the vessel whose privilege has been infringed. A broader view of the statute is incompatible with the necessities of the harbor, which the legislature may be presumed to have considered.

The decree is affirmed, with interest and costs.