### THE CHAUNCEY M. DEPEW.

(Circuit Court of Appeals, Second Circuit. May 17, 1905.)

#### No. 202.

COLLISION—VESSEL LYING AT END OF PIER—NEW YORK STATUTE.

Libelant's canal boat was lying outside of others at the end of a pier in East river, in violation of Laws N. Y. 1897, p. 314, c. 378, § 879, which prohibits vessels from obstructing the waters of the harbor by lying at the exterior end of wharves in the North or East rivers, and provides that "any vessel * * * so lying shall not be entitled to claim or demand damages for any injury caused by any vessel entering or leaving any adjacent pier." While so lying, respondent tug brought a barge to the end of the pier to be warped into the adjoining slip, and, through negligence in handling, brought her into collision with the canal boat. Held that, while the statute did not govern the right of recovery in a court of admiralty, the regulation was one which it was competent for the state to make, and its violation was a fault on the part of the canal boat which contributed to the collision and rendered her liable for one-half the damages.

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decree of the District Court, Southern District of New York, holding the tug solely in fault for damages sustained by libelant's canal boat William S. Deyo in consequence of a collision with the barge Sharon, which the Depew was endeavoring to place in the slip on the south side of the pier at the foot of Ninety-First street, East river. The opinion of the District Court is reported in 130 Fed. 59.

A. G. Thacher, for appellant.

La Roy S. Gove, for appellee.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

LACOMBE, Circuit Judge. The Deyo was the fourth or outside vessel moored at the end of the pier at the foot of Ninety-First street. These craft lay parallel to the end of the pier, one outside of the other. None of them projected beyond the lower line of said pier, but all of them came out to said line, and all projected beyond the upper line of the pier. The tug had three barges in tow, two (the Sharon outside) on her starboard side and one on the port. The destination of the Sharon was the lower side of the Ninety-First Street Pier, where she was to unload into another barge already there. There are shoals off the entrance to the slip on the lower side of the pier, and the usual method of entering, especially on a flood tide, is to head upstream, then round to so that the tow points downstream, bringing the starboard barge alongside of the

end of the pier. A line is then run from the barge to the pier, the tug drops back, places its bow against the stern of the barge, and goes slowly ahead, thus turning the barge on the corner of the pier, and swinging her into the slip by her line. The story of the claimant is that this turning or pivoting maneuver was employed by the Depew to enable the Sharon to enter the slip below the Ninety-First Street Pier, the turn being made on the corner of the canal boat instead of on the corner of the pier. There is great conflict in the testimony as to whether the Deyo was headed up or down, but the District Judge who saw and heard the witnesses found that she was headed up, with her starboard side exposed. Claimant contends that the Depew slowly approached the four boats moored at the end of the pier, that a line was run to the barge already moored on the lower side of the pier, and that the tug then pushed the Sharon carefully around the corner of the Deyo. The District Judge, however, reached a different conclusion. The testimony of the surveyors showed that the damage was near the bow, planks driven in on the starboard side and out on the port, and the District Judge concluded that the tug had carelessly brought the Sharon into collision with the canal boat some distance above the place where it was necessary to bring the vessels into contact in order to make the turn. But in whatever way they were brought into contact, we are satisfied from the record that the tug did not sufficiently reduce speed, but brought the Sharon so violently into contact with the Deyo as to cause damage which more careful execution of the maneuver she sought to execute would have avoided. We do not find the tug in fault for undertaking to make the turn on the corner of the canal boat instead of on the corner of the pier. Under the statute hereinafter referred to, the risk of injury from such a maneuver, carefully conducted, was one which the canal boat assumed when she improperly placed herself at the end of the dock in water which was prohibited to her as a berth. But the privileged vessel, although thus obstructed and embarrassed, was none the less under an obligation to exercise reasonable care when undertaking to use the corner of the canal boat as a fulcrum instead of the corner of the dock. And that fault is sufficiently covered in the libel by charges of carelessness in "not avoiding" the Deyo, and in "not stopping and backing in time to avoid collision." We concur in the conclusion that the Depew was in fault.

It is contended that she is relieved from all liability for the consequences of that fault by the provisions of chapter 378, p. 314, Laws 1897, § 879, which reads as follows:

"It shall not be lawful for any vessel, canal boat, barge, lighter or tug to obstruct the waters of the harbor by lying at the exterior end of the wharves. in the waters of the North and East river except at their own risk of injury from vessels entering or leaving any adjacent dock or pier; and any vessel, canal boat, barge, lighter or tug so lying shall not be entitled to claim or demand damages for any injury caused by any vessel entering or leaving any adjacent pier."

The District Judge held that this statute did not apply, because "the Sharon was bound, for a brief time at least, for the end of the

pier." We are unable to concur in this conclusion; the Sharon was bound for the slip adjacent to the pier, although, to effect an entrance, it was necessary first to bring her side up to the lower corner of the pier end. The statute has been several times considered (see cases cited in the opinion of the District Court), but in all of them the colliding vessel was not bound either in or out of an immediately adjacent slip. In The Dean Richmond, 107 Fed. 1001, 47 C. C. A. 138, we held that the statute was not to be extended to cover cases which are not clearly within its terms, and commented on the circumstance that it was very loosely expressed. Although broad language is used in the second clause of the section, we are not prepared to attribute to the Legislature any attempt to regulate procedure in the federal courts, or to alter or modify the principles upon which those courts administer their admiralty jurisdiction. All that was intended was a prohibition against prosecuting the claim or demand for injury, caused by the moving vessel, in the courts of the state. Whether the conduct of a particular vessel has been rightful or wrongful may well be determined by reference to the local statute regulating its operations, but it is not to be assumed that the State Legislature undertook to interfere with the federal admiralty courts in the exercise of their peculiar jurisdiction. . Referring to this very statute, we held in The Dean Richmond, supra, that "it was undoubtedly competent for the Legislature to prohibit such a use of the piers, in the interests of the general convenience and expediency." The Deyo lay at the end of the pier in flagrant violation of the terms of this statute. That she was an obstruction to navigation is manifest. "The purpose of the present statute would seem to be to remove all controversy * * * in respect to the extent of the obstruction caused by the manner in which the vessel is moored." The Dean Richmond, supra. She occupied water which in this particular case was required in order to allow the Sharon to be warped around the corner of the pier in the usual and proper manner. She was lying where she had no right to lie, increasing the difficulties of all boats trying to enter or leave the adjacent slips, and was herself in fault. Moreover, her fault contributed to the collision, whichever way it came about. Had she been elsewhere than in the prohibited place, the Sharon might have been brought up against the solid end of the pier with impunity, and could have been warped around the corner in water which the statute reserved for her uses, without injury to the Deyo, to herself, or to any other vessel.

Since both vessels were in fault, the damages should be divided. The decree of the District Court is reversed, with costs of this court in favor of the Depew against the Deyo, and cause remanded with instructions to enter decree in favor of the Deyo against the Depew for one-half the damages, without costs.