THE ALLEMANIA.

(Circuit Court of Appeals, Second Circuit. March 14, 1916.)

Nos. 164, 165.

1. COLLISION ⬅➡71(2)—MOVING AND MOORED VESSELS.
   A steamship entering a slip in the North River *held* solely in fault for a collision with a car float, which was lying below a pier to which it was made fast by a line, and which was in full view of the moving steamer.
   [Ed. Note.—For other cases, see Collision, Cent. Dig. § 101; Dec. Dig. ⬅➡71(2).]

2. COLLISION ⬅➡70—VESSEL LYING AT END OF PIER—HARBOR REGULATION.
   New York City Charter (Laws 1901, c. 466) § 879, which provides that no vessel lying at the exterior end of a pier in the North or East River "shall be entitled to claim or demand damages for any injury caused by any vessel entering or leaving any adjacent pier," is highly penal, and should be strictly construed. As so construed, it does not apply to a car float which was not actually lying at the end of a pier, but was made fast to one corner of it by a line and hung below the pier.
   [Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 91–100; Dec. Dig. ⬅➡70.]

Appeals from the District Court of the United States for the Southern District of New York.

Suits in admiralty for collision by the Erie Railroad Company and by Jerry Petrie, wherein the Erie Railroad Company was impleaded, against the steamship Allemania; the Hamburg-American Line, claimant. Decree for the Erie Railroad Company for half damages, and in favor of Petrie against both the steamship and the Railroad Company, which appeal. Modified and affirmed.

For opinion below, see 224 Fed. 633.

Herbert Green, of New York City, for Erie R. Co.

Haight, Sandford & Smith, of New York City (H. M. Hewitt, of New York City, of counsel), for the Allemania.

Before COXE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. [1] June 30, 1913, on a bright, clear day, with the tide ebb, the tug Nanuet at about 8 a. m. brought the Erie Railroad Company's float No. 18 laden with 10 cars, some loaded and some light, to the south side of the slip between Piers 7 and 8 East

---

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

River. As the steamship Allemania was expected to berth there, the float was ordered out and the tug tied her to the lower outer corner of Pier 7 on a line about 8 feet long and then went into the slip to arrange for a berth. The float hung down the river, her lower end resting against the tug Henry D. McCord which was herself lying outside of a steam lighter at the exterior end of Pier 6.

After this was done the steamship Allemania appeared coming upstream under her own steam and attended by at least one tug. She rested her port bow against the upper corner of Pier 7 with the intention of warping into the slip, but her port side came into collision with the car float, which as a result squeezed against the tug McCord. The Erie Railroad Company, owner of the car float, and Jerry Petrie, owner of the McCord, filed libels against the Allemania to recover their damages, and the Hamburg-American Line, claimant of the Allemania, brought in the Erie Railroad Company as a party to the Petrie suit under the fifty-ninth rule.

The charge against the Erie Railroad Company is that Float No. 18 was made fast in a dangerous position relatively to the steamer Allemania, which it was known was to come into the slip between Piers 7 and 8. The District Judge found both the steamer and the car float at fault and ordered a decree of half damages in favor of the Erie Railroad Company and a decree in favor of Petrie, claimant of the tug McCord, which was not at fault, against the Hamburg-American Line and the Erie Railroad Company.

The pleadings of all the parties allege that the Allemania was carried against the car float by the effect of the ebb tide, but some of the witnesses at the trial testified that the car float was drawn against the steamship's port side by the suction caused by her propeller. We think it makes no difference whether one or both of these things caused the injury because, the car float being at rest in full view and the steamer in motion, the latter by the exercise of ordinary care could have avoided the collision.

[2] The real question is as to the effect of section 879 of the city charter, which reads:

"It shall not be lawful for any vessel, canal boat, barge, lighter or tug to obstruct the waters of the harbor by lying at the exterior end of wharves in the waters of the North or East Rivers, except at their own risk of injury from vessels entering or leaving any adjacent dock or pier; any vessel, canal boat, barge, lighter or tug so lying shall not be entitled to claim or demand damages for any injury caused by any vessel entering or leaving any adjacent pier."

We have held that this statute, though not binding upon the federal courts, may yet afford grounds for imputing fault to a vessel violating it. The Chauncey M. Depew, 139 Fed. 236, 71 C. C. A. 362. But the law is highly penal. Literally it prevents a vessel violating its provisions from recovering at all, even if the damage she sustains is solely caused by the fault of the vessel entering the adjacent slip. It should be strictly construed. The Dean Richmond, 107 Fed. 1001, 47 C. C. A. 138.

We do not think that the car float can be considered as lying at the exterior end of Pier 7 within the meaning of the statute. It contem-

plates a vessel actually lying at the exterior end and not hung on to it and lying in the river some distance below. A vessel hung on in this way may improperly and unnecessarily obstruct navigation, but its liability will depend upon the general principles of negligence and not upon any violation of the provision of this statute.

The decree is modified, and the court below directed to enter decree in favor of the Erie Railroad Company and of Jerry Petrie against the steamship Allemania, with costs of both courts, and costs to the Erie Railroad Company in the Petrie Case against the claimant of the Allemania.