## THE NEW YORK CENTRAL NO. 18.

### THE AMANDA MOORE.

(Circuit Court of Appeals, Second Circuit. February 14, 1919.)

No. 152.

1. COLLISION ⬤⟶9, 73—SUIT FOR DAMAGES—VIOLATION OF HARBOR RULE—VESSEL LYING AT END OF PIER.

New York City Charter, § 879, providing that no vessels shall lie at the end of piers, "except at their own risk of injury from vessels entering or leaving any adjacent dock," while not binding on courts of admiralty to the extent of absolutely preventing recovery, is recognized by them as establishing a valid harbor rule, a violation of which is evidence of negligence, and casts on the violator the burden of showing affirmatively that the violation did not contribute to its injury.

2. COLLISION ⬤⟶9—DEFENSES TO SUIT—VESSEL LYING AT END OF PIER.

A violation by a vessel of the New York harbor rule against lying at the end of a pier can be invoked only by vessels entering or leaving an adjacent slip, the risk of injury from which under the statute such vessel assumes, and they are not exempted from the duty to exercise proper care.

3. TOWAGE ⬤⟶11(6)—INJURY TO TOW IN COLLISION—LIABILITY OF TUG.

A tug cannot be held liable for injury to her tow by collision, because she tied the tow at the end of a pier, where it was done with the express consent of the owner.

4. COLLISION ⬤⟶72(2)—TUG MOVING OUT OF SLIP AND SCOW LYING AT END OF PIER—FAULT.

A collision between a tug moving out of a slip and a scow held by her towing tug at the end of an adjacent pier *held* due to faults of all three vessels.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by Fred E. Jones, owner of Scow No. 33, against the steam tug New York Central No. 18, with the steam tug Amanda Moore impleaded. Decree for half damages against the Moore, and libelant appeals. Reversed, with directions to distribute damages between libelant and both tugs.

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Libelant owns the scow No. 33. On a fair summer day, the tide being strong flood, she was in tow of the tug Amanda Moore. It was intended to take the scow into the slip between Piers 32 and 33, East River. The slip, however, was already occupied—at least by the tug New York Central No. 18, engaged in pulling out the lighter Black Rock. To give No. 18 time to execute her maneuver before towing No. 33 into the slip, the Amanda Moore landed libelant's scow on the end of Pier 33, making her fast in such manner that her end nearest the slip was about 15 feet from the lower outer corner of Pier 33.

This procedure was in violation of section 879 of the Charter of New York City (Laws 1901, c. 466), quoted in The Allemania, 231 Fed. 942, 146 C. C. A. 138, which declares that no vessels shall lie in the position that No. 33 occupied, "except at their own risk of injury from vessels entering or leaving any adjacent dock or pier." Tug No. 18 put a line from her own bow upon the Black Rock and backed out of the slip, blowing a slip whistle as she went. As the tug passed out of the slip, the full force of the tide struck her broadside, and threw the tug against the end of No. 33, causing the damages sought to be recovered in this action. The libelant testified that he knew his scow was going to the slip in question, and that he had, if not instructed, at least authorized, those in charge of the Amanda Moore to tie up his scows (and among others the 33) at the ends of piers. He was specifically asked whether in these instructions he included the end of the "pier as well as the inside of the slip," and he answered in the affirmative. It did not appear that the navigator of the Amanda Moore was aware of this order or willingness of the libelant; the same having been communicated by libelant to the owner of that tug.

It is inferable from the record that libelant's scow had no crew; she was wholly in charge of the Amanda Moore, and the line to the pier end was thrown out and made fast by a tug deckhand. The court below dismissed the libel as to New York Central No. 18, and gave half damages to libelant against the Amanda Moore. From this decree libelant alone appealed.

Henry E. Mattison and Park & Mattison, all of New York City, for appellant.

George E. Hargrave, T. Catesby Jones, and Harrington, Bigham & Englar, all of New York City, for the New York Central No. 18.

George Whitefield Betts, Jr., Robert McLeod Jackson, and Hunt, Hill & Betts, all of New York City, for the Amanda Moore.

Before ROGERS and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

HOUGH, Circuit Judge (after stating the facts as above). [1] Section 879 of the charter is to be construed and applied as required by our previous decisions (The Allemania, supra, The Dean Richmond, 107 Fed. 1001, 47 C. C. A. 138, and The Chauncey M. Depew, 139 Fed. 236, 71 C. C. A. 362). It does not absolutely prevent a vessel lying at the pier end from recovering against manifest tort-feasors. But a violation of the statute is sufficient evidence and sufficient reason for imputing fault to the violator. The consequence of such violation is, by the statute, that the violator cannot recover for injuries inflicted by a vessel "entering or leaving any adjacent pier"—i. e., slip. Our decisions quoted above hold that this absolute prohibition of recovery does not bind the courts of the United States, at least sitting in admiralty; but we have fully recognized the statute as establishing a valid rule for the management of the harbor. A departure therefrom, like a departure from any other legal rule, is evidence of negligence, and casts on the violator the burden of showing affirmatively that the violation did not contribute to the injury giving rise to suit.

[2] Undoubtedly such violation of rule can be invoked only by vessels of the class enumerated by the statute, viz. those "entering or leaving" a slip adjacent to the pier end at which the offender lies; and even a violation of rule does not give any one the right to dispense with care, and treat a vessel wrongfully at the pier end as an outlaw. The Cincinnati (D. C.) 95 Fed. 304.

The statement made in Wright, etc., Co. v. New England, etc., Co. (D. C.) 189 Fed. 813, that the statute does not make lying at a pier end illegal, is true, in the sense that no crime is thereby committed; but, if construed to mean that no valid rule is established by the enactment, it is erroneous. That case was affirmed in 204 Fed. 762, 125 C. C. A. 129, and the point of statutory violation was disposed of by referring to The Rhein, 204 Fed. 252, 122 C. C. A. 520, in which case it was held that the statute was not applicable; nor was it in the Wright Case, though for a different reason.

But out of the language, not the facts, of the last two cases cited, there seems to have developed an impression that lying at a pier end is, even as to vessels entering and leaving the adjacent slips, not a fault, unless there be some other and special circumstances making the prohibited position dangerous to others. This is incorrect, and anything to that effect in The Stella (D. C.) 243 Fed. 220, and The Daniel McAllister (D. C.) 245 Fed. 188, must be regarded as erroneous.

[3] The ground upon which half damages against the Amanda Moore were allowed below was that that tug violated the statute with libelant's consent. This is true; but we are unable to perceive that libelant has any cause of action against the Amanda Moore for doing exactly what he distinctly told the tugboat owners they might do when he employed them. It was therefore no fault (in respect of this libelant) for the Amanda Moore to fasten the scow at the pier end.

[4] But the duty of the tug was not confined to merely pausing at the slip entrance until No. 18 could get out. She was obliged to take such steps as good navigation required while she was there. Therefore the question of fact is whether there was any error of navigation on the part of either No. 18 or the Amanda Moore while the former was pulling out the Black Rock—an operation admitted on all sides as not easy, owing to the narrowness of the waters and congestion in the slip.

The tide was running about five knots. It was sure to hit heavily on the broadside of any vessel emerging from the slip. The Moore had fastened her scow and herself with only a single line, and it was quite possible to slack off the line in an instant and let both scow and tug drift away with the tide.

The master of No. 18 saw what was at the end of the pier, blew his whistle, and says that he did not think he would strike the scow, because "I thought he would slack up with the line"; but he held no conversation with the master of the Moore, whom he saw, never asked him to do what he says he expected would be done, and (in short) went ahead on the chance that all would be well.

The master of the Moore saw the No. 18 coming, and says that he did not cast off his line and drop back with the tide, "because I thought

she had room enough to go up clear," which was exactly what the No. 18's master knew did not exist.

The No. 18 put on full speed and attempted to execute a maneuver which could not succeed unless the master of the Moore co-operated with him; but no means of co-operation were suggested. It was left to divination.

In our opinion the No. 18 was at fault for close shaving, and not attempting to get the Moore to remove herself and scow, and the Moore for not executing an obvious maneuver, which would certainly have mitigated and might have avoided collision.

Therefore all parties to this action were at fault, and it is ordered that the decree appealed from be reversed, with one bill of costs in this court against the two tugs jointly, and the cause be remanded with directions to distribute the damages between the libelant and both tugs, upon the principles enunciated in The Harold (D. C.) 84 Fed. 704, and The Lyndhurst (D. C.) 92 Fed. 682.