## THE DANIEL McALLISTER.

(Circuit Court of Appeals, Second Circuit. April 16, 1919.)

Nos. 134, 135.

1. COLLISION �gă-71(2)—TOW LEAVING SLIP—NEGLIGENT TOWAGE.

A tug, which negligently attempted to take a coal barge out of a slip in East River on a strong flood tide on a hawser instead of alongside, *held* solely in fault for a collision between her and vessels lying at the end of the pier and resulting collisions between such vessels, which were broken from their moorings, and others.

2. COLLISION ⟭-71(3)—CONTRIBUTORY FAULT—VESSELS TYING AT END OF PIER.

The fact that barges were tied up at the end of a pier in violation of the statute *held* not a contributory cause of a collision between them and a barge being towed from an adjoining slip, where there was ample room for the tow to pass safely if properly navigated.

3. NEGLIGENCE ⟭-62(1)—PROXIMATE CAUSE OF INJURY—INTERVENING ACT.

If there is an unbroken connection between the act and the injury, the act causes the injury, and an intervening act is not the proximate cause of the injury unless it is efficient to break the causal connection.

Appeals from the District Court of the United States for the Eastern District of New York.

Suits in admiralty for collision by John D. Lohman against the steamtug Daniel McAllister with others impleaded, and by Charles H. Castle against the steamtug Daniel McAllister and others. Decree for libelants, and McAllister Bros., claimants, appeal. Affirmed.

Hyland & Zabriskie, of New York City (Nelson Zabriskie, of New York City, of counsel), for appellants.

Foley & Martin, of New York City (James A. Martin and George V. A. McCloskey, both of New York City, of counsel), for appellee Lohman.

Macklin, Brown & Purdy, of New York City (William F. Purdy, of New York City, of counsel), for appellee The Kaaterskill No. 2.

Harrington, Bigham & Englar, of New York City (George E. Hargrave and T. Catesby Jones, both of New York City, of counsel), for appellees Clayton and New York Cent. R. Co.

Charles M. Sheafe, Jr., of New York City, for appellee New York, N. H. & H. R. Co.

Herbert Green, of New York City, for appellee Erie R. Co.

Before WARD, ROGERS, and MANTON, Circuit Judges.

MANTON, Circuit Judge. [1] On February 1, 1916, at about 4 p. m., the steamtug Daniel McAllister undertook to shift the coal barge Ruth C. Lohman from the slip between piers 31 and 32, East River, intending to get her a berth on the northerly side of Pier 32. Here, she was to discharge her cargo of coal, nearly 500 ton. The barge was lying, stern out, on the northerly side of Pier 31, about halfway up the slip, at the bulkhead. After making fast on a bridle hawser some 50 to 75 feet in length, the tug towed the barge, stern

first. The weather was fair and clear and with little wind. There was a strong flood tide. Before making fast, the captain of the McAllister expressed doubt, to an officer of the coal company near by, whether it was safe to take the barge out of the slip in view of the tide. He, however, proceeded to do so in the manner described. The barge was about 97.4 feet in length and 21 feet in width. The McAllister was about 24 feet wide. The space between the southerly end of the rack and the northerly corner of Pier 31 was about 106 feet, and this, with the exercise of care in navigation, particularly if the barge was tied alongside, would permit proper control of the movements and insure a safe passage. The tugboat went straight out, instead of pulling down against the tide. This made her tow shear toward some covered barges which were moored at the end of Pier 32. The McAllister did not head into the tide as soon as she should have done in order to offset it, and, when she attempted it, she did not have power enough to overcome the tide. The tide struck the Lohman as soon as she passed beyond the pier end, and, when she was about one-third part of the slip, her stern swung upstream coming in collision with the barge Clayton. At the end of Pier 32 and nearest to the pier, in the order named, were the Erie barge No. 223, Lehigh Valley barge No. 27, the Clayton, and the Kaaterskill. They were overlapping both the pier end and the rack, having been shifted some 15 feet by the lighter Graylock from a position right at the end of Pier 32, to a position in which they overlapped the rack so that they were 50 feet north of its slanting wing. The collision was of sufficient force to cause damage to the Clayton and drive the four barges adrift.

The flotilla in turn struck three or four barges at the end of Pier 33, breaking their fasts. The drifting flotilla carried away other boats at Pier 36. Alarms were blown by the McAllister, and the transfer tug No. 9 and transfer tug No. 7 of the New York, New Haven & Hartford Railroad Company, which were lying at Piers 38 and 40, came to the rescue. The No. 7 picked up some drifting boats. The No. 9 undertook to land the rest of the flotilla, and, while so doing, one of the flotilla struck the Haines then lying at Pier 41. The Haines was damaged and is the subject of a companion suit to be considered hereafter in this opinion. While this drifting took place, the Lohman was fast to the McAllister by the starboard line, as the line of the barge's port line parted shortly before the boats came to Pier 41. The Clayton struck and damaged the Haines which was lying outside of the end of the car float on the northerly side of Pier 41; the transfer No. 7 assisted the McAllister in towing the Lohman to Pier 32 for the reason, as stated by the McAllister's captain, she was not strong enough. In landing her tow at this, her original destination, the McAllister broke another part of the Lohman's rail by a collision with the stern of the covered barge. It was while the No. 9 was getting these boats in shore that the Clayton came in contact with the side of the Haines and the Lohman got under the bow of the Kaaterskill or the Clayton. There are divergent views as to which boat actually struck the Haines, but this is not important. It was while in this position that the McAllister swung alongside the Lohman and attempted to

push her ashore against the southeasterly corner of Pier 41 and across the forward corner of the Haines which, at that time, was partly down across the end of Pier 41. It is claimed, however, that the transfer No. 9, which was assisting in this maneuver and trying to avoid the drifting of the boats, was negligent in the manner in which she attempted to land the boats, allowing them to bump against the side of the Haines. The McAllister interpleaded the Lehigh Valley barge No. 27, the Erie barge No. 223, the New York Central barge Clayton, and the barge Kaaterskill No. 2. The Kaaterskill No. 2 denies any responsibility on her own part and alleges the fault to be that of the McAllister or the New York Central, which was the charterer of the barge Kaaterskill at the time and had moored her at the place named by one of its own tugs. The New York Central, on the other hand, denies that it was in charge of the barge Kaaterskill No. 2, and denies that it was at fault for the collision because of the presence of either the Kaaterskill No. 2 or the Clayton at the time of the disaster. The Erie Railroad denies fault, and alleges that the four boats off the end of the pier had but shortly been in that position, having been placed there by the Graylock. The McAllister denies fault on its part and contends that the collision was caused by the position of the barges at the end of the pier which, it says, was in violation of section 879 of the City Charter (Laws N. Y. 1901, c. 466). This statute forbids boats lying across pier ends in the North and East Rivers "except at their own risk of injury from vessels entering or leaving any adjacent dock or pier." It is a fault under the maritime law, irrespective of the section of the charter, to unnecessarily interfere with vessels entering or leaving slips. Westernland (D. C.) 24 Fed. 703.

[2] Responsibility for damage by barges thus found at the end of piers depends upon circumstances, but its distance in or out, as governed by the boats lying between it and the end of the pier, cannot determine liability. To be sure, each boat, beginning with the one on the outside, is responsible for the remaining ones moored off the pier end to the extent as the position in which it is moored violates the section of the charter. The Lohman struck the Clayton, the third boat out, and therefore the two inner boats, the Lehigh Valley barge No. 27 and the Erie barge No. 223, were not in such a position as to interfere with the movements of the Lohman in attempting to come out of the slip. They should therefore not be held at fault. Their presence simply made part of the physical situation which required the mooring of the Clayton and the Kaaterskill in a position further out at the pier's end. But the position of the Clayton and the Kaaterskill was not the proximate or producing cause of the collision. It sufficiently appears that the McAllister was negligent in attempting to leave the slip in a flood tide, having the barge made fast on a bridle hawser instead of alongside. The captain of the McAllister knew, or should have known, that he could not successfully buck the tide with the Lohman. He says he intended merely to drop back so as to drop her in at the pier to which she was destined. He thought he would swing clear of the barges that he knew were lying off the end of

Pier 32. He must be condemned for attempting to undertake a maneuver, such as this, in too small a space and in failing to prepare to meet the force of the tide and direct his navigation accordingly.

As was to be expected, the Lohman and the McAllister drifted back immediately as they rounded Pier 31 and thus diminished the space in which the Lohman could swing out into the river, even though the space was wide enough to allow her to make the turn if the tide had less force. Such a collision as this record discloses, indicates an absence of good seamanship and due performance by the tug of its duty to the tow. Such a result may be a safe criterion by which to judge of the character of the act which caused it. Steamer Webb, 81 U. S. (14 Wall.) 406, 20 L. Ed. 774. To make the attempt when the captain knew he had not sufficient power to keep or regain control of his tow is, of itself, a fault, for the tug impliedly represents herself as having sufficient power for the services she undertakes. Chas. B. Sandford, 204 Fed. 77, 122 C. C. A. 391. If the tide was too strong, the McAllister should have waited for a slack water. The Margaret, 94 U. S. 494, 24 L. Ed. 146; The Potomac (D. C.) 147 Fed. 293.

The fact that the Clayton and the Kaaterskill were in a position which, to some extent, may have interfered with the carrying out of the maneuver attempted by the McAllister and reduced the room to navigate as intended, cannot fix liability upon either boat. The occurrence was in the daytime. The tide was known; the danger was observed by the captain of the McAllister. There was no sudden emergency, such as a storm or other vessels navigating to reduce the space. The presence of the barges at the pier's end did not give the McAllister the right to dispense with care. The Cincinnati (D. C.) 95 Fed. 304. It has been recently decreed by this court that a vessel is not absolutely prevented from lying at the pier end and therefore prevented from recovering from manifest tort-feasors, and, further, that a violation of the statute is sufficient evidence and sufficient reason for imputed fault to the violator, and the consequence of such violation is that the violator cannot recover for injuries inflicted by vessels entering or leaving any adjacent pier. The New York Central No. 18, 257 Fed. 405, 168 C. C. A. 445, decided Feb., 1919. There Jud� Hough said:

"A departure therefrom [the statute], like a departure from any other legal rule, is evidence of negligence and casts on the violator the burden of showing affirmatively that the violation did not contribute to the injury giving rise to suit. Undoubtedly, such violation * * * can be invoked only by vessels of the class enumerated in the statute, viz., those 'entering or leaving' a slip adjacent to the pier end at which the offender lies; and even a violation of rule does not give any one the right to dispense with care, and treat a vessel wrongfully, at the pier end as an outlaw."

We think that the presence of the barges at the end of the piers was not a contributory cause of the collision, and that the proximate and producing cause was the negligent navigation of the McAllister, and she is held solely at fault for the damage done the Lohman by reason of this collision. We therefore conclude that the McAllister was to blame for the collision and causing the barges to go adrift.

[3] In the second action in which the owner of the Haines seeks

to recover for damages done to that vessel, we are of the opinion that the McAllister is solely at fault. Transfer No. 9 came to the rescue and was unable to avoid the collision with the Haines because of the drift of the tide. The damage was done by the boat striking the Haines' port side and driving her starboard side against a car float. Whether that boat was the Lohman or the Kaaterskill is in dispute. The Haines was damaged by this flotilla striking against her, and it makes little difference which boat it was. There was nothing which was done by the transfer No. 9 which changed the general direction of the flotilla in its drift toward the pier where the Haines was moored. The McAllister set in motion a train of events involving this series of collisions which, with the added impetus due to the tide, must be charged against the McAllister. Her negligent operation was the proximate cause which set the other causes in motion. If there is an unbroken connection between the act and the injury, the act causes the injury and the intervening act is not the proximate cause of injury unless it is efficient to break the causal connection. Muller v. Firemen's Ins. Co., 246 Fed. 759, 159 C. C. A. 61.

Decree affirmed.