## THE HENRY LEE.

*(District Court, E. D. New York. February 15, 1921.)*

Collision ☞71(3)—**Tug entering slip not liable for collision with vessel lying at end of pier.**

A tug which, when maneuvering to enter a crowded slip with a tow alongside, under the influence of an ebb tide, sagged against a vessel lying at the end of the pier with her bow over the line of the slip, *held* not liable for the injury caused to such vessel, in the absence of evidence that she was carelessly or recklessly navigated, and especially in view of New York City Charter, § 879, providing that vessels lying at the end of piers do so at their own risk of injury.

In Admiralty. Suit by William H. Anderson and others, copartners, against the steam tug Henry Lee. Decree for respondent.

Foley & Martin, of New York City, for libelants.

Frederick W. Park, of New York City, for claimant.

CHATFIELD, District Judge. On the afternoon of July 19, 1916, the steamer Theresa was moored at the end of Pier 7, East River, borough of Manhattan, with her bow upstream and projecting a short distance (admitted by the libelant to be at least 18 inches) over the line of the north side of the pier. The Theresa was previously a yacht, having a clipper bow, which had been cut down after the bowsprit had been removed, and given a perpendicular stem above the water line.

At this time the steam tug Henry Lee brought a hoister into the slip between Piers 7 and 8, intending to put this hoister on the southerly side of a steamer moored alongside of Pier 8. The slip was fairly well filled with lighters and it was necessary to maneuver the hoister in between the boats, particularly as a strong ebb tide made it difficult for the Lee to swing into the slip and work the hoister alongside of the steamer without going to the trouble of moving the various boats in the slip. The Lee succeeded in getting the hoister alongside the steamer, but either in passing into the slip, or in backing around in order to get out of the slip, was carried by the ebb tide against the bow of the Theresa, inflicting some damage.

The case was not tried until November 3, 1920, and the captains of the two boats were the only witnesses. Serious disagreement between them as to whether the Lee recklessly jammed into the slip, without regard for the Theresa, or whether she was unavoidably carried against the Theresa as she backed out, affected the recollection of each witness, and made it difficult to determine which story was the more credible. But, so far as the court can determine from the conflicting statements, it would appear that the Lee must have sagged

against the bow of the Theresa when burdened with the weight of the hoister alongside, or must have backed against the Theresa in maneuvering when getting the hoister into place, as the damage to the Theresa was sufficient to indicate a fairly severe blow.

We have therefore the situation where a tugboat in broad daylight, maneuvering to enter a slip, injures a boat projecting into the slip and moored at the end of the pier. The provision of the New York charter (Laws 1901, c. 466) considered in The Chauncey M. Depew, 139 Fed. 236, 71 C. C. A. 362, The Dean Richmond, 107 Fed. 1001, 47 C. C. A. 138, and The Allemania, 231 Fed. 942, 146 C. C. A. 138, has been held by the Court of Appeals of this Circuit, in The Daniel McAllister, 258 Fed. 549, 169 C. C. A. 489, not to be an excuse for careless or reckless navigation by a boat entering a slip, where the injury complained of was inflicted upon some other boat than the one lying at the end of the pier, and where the presence of this boat at the end of the pier was merely one of the circumstances under which the careless navigation was undertaken.

In the cases of The New York Central, No. 18, 257 Fed. 405, 168 C. C. A. 445, and Howell v. Delaware, L. & W. R. Co. (C. C. A.) 262 Fed. 119, it was held that the ordinance in question was but an expression of admiralty law, in that a boat projecting into or interfering with the entrance to a slip should be held liable for injuries to a vessel entering the slip and endeavoring, with careful navigation, to avoid the obstruction, if injury results from the presence of the obstruction. By similar reasoning, if the boat obstructing the slip receives the damage, it cannot under the ordinance or under admiralty law recover for any damage occasioned by its protruding into the slip.

The provision of the charter defines another proposition of law well recognized in admiralty, to the effect that a boat is expected to be able to withstand ordinary contacts and usage in traffic, and that it is not negligence for a boat entering a slip to come in ordinary contact with a boat lying at the end of the slip and around which the second vessel may be required to warp or work, unless the apparent danger is so great that it would be of itself negligence to make such a maneuver on the part of the vessel entering the slip.

In the case at bar either the Theresa was so weak in her new construction that she could not withstand the sagging down of the boat against her, when that boat was attempting to work around into the slip, or she was moored in such a position that she received a blow which would have been taken by the corner of the pier, if she had not projected into the slip. On either theory she cannot recover against the vessel entering the slip, unless this tug was so recklessly maneuvered as to indicate a willful collision and the infliction of a blow much stronger than the ordinary maneuvering around the corner of a dock in entering a slip.

The testimony in this case does not show, even though the captain of the Lee was impatient and disdainful of the Theresa's strength, that he was oblivious of her rights. He testified that he whistled to her to warn her of her danger as he was entering the slip. The captain of the Theresa paid no attention to this warning, and apparently

expected the Lee to keep out of the Theresa's way. The situation is somewhat like that of a person crossing a street between the regular street crossings. Another person, driving a vehicle, has no right to deliberately run down the person so crossing the street, on the theory that the person crossing the street has no rights to be respected. But the person crossing the street cannot complain if, under ordinary circumstances of traffic, drivers are unable, when using reasonable care, to avoid running them down.

The libelant has not satisfactorily shown willful and deliberate negligence on the part of the captain of the Lee, and on all the grounds above stated the libel must be dismissed.