## THE DANIEL B. FLANNERY.

### FLANNERY v. NATIONAL COAL & ICE CO., Inc.

(Circuit Court of Appeals, Second Circuit. June 5, 1922.)

No. 278.

1. **Collision ⬅73—Barge in collision, when lying at end of pier, has burden of showing that its position did not contribute to collision.**

In libel for damage to a barge, sustained in collision with a tug backing out of the slip while the barge was lying at the end of the pier, the barge had the burden of showing affirmatively that her presence at the end of the pier did not contribute to the collision, under a provision of the New York City Charter making it unlawful for any barge or vessel to obstruct the waters of the harbor by lying at the exterior end of wharves, except at their own risk of injury from vessels entering or leaving any adjacent dock or pier.

2. **Collision ⬅71 (3)—Presence of barge at pier end held not contributing cause of collision with tug backing out of slip.**

Where barge lying at end of pier did not project further north than the middle of the end of the pier, and did not project across the slip, so that there was ample room for a tug to pass out of the slip, if she had been properly navigated, the presence of the barge at the pier end was not a contributory cause of the collision of the barge with the tug, so as to preclude the barge from recovering damages under a provision of the New York City Charter prohibiting vessels from lying at the exterior end of wharves in the waters of the North or East Rivers, except at their own risk of injury.

Appeal from the District Court of the United States for the Southern District of New York.

Libel in admiralty by Daniel B. Flannery against the National Coal & Ice Company, Inc., William G. McAdoo, as Director General of Railroads, and the Cornell Steamboat Company. Decree for libelant, and respondent Steamboat Company appeals. Reversed.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City, (Robert S. Erskine, of New York City, of counsel), for appellant.

Macklin, Brown, Purdy & Van Wyck, of New York City (Pierre M. Brown, of New York City, of counsel), for libelant-appellee.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Alexander & Ash, of New York City (Edward Ash, of New York City, of counsel), for appellee National Coal & Ice Co.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge. This is a suit in admiralty, commenced by the libelant, as owner of the barge Daniel B. Flannery, to recover damages sustained by her while moored at the end of a pier in the North River, New York City, as the result of a collision with the tug Athens.

It appears that in June, 1918, the libelant chartered the barge to Burns Bros. Ice Corporation for the purpose of carrying ice down the river. At the time she was thus chartered she was a new boat and in first-class condition, never having been used. The boat had a capacity of about 1,025 tons, was 110 feet long, and was 29 feet in width. The captain of the boat was employed by the libelant, being hired and paid by him. At the time of the chartering of the boat it was agreed that the owner should furnish, along with the boat, a captain who should be in charge of her.

In August, 1918, the Burns Bros. Ice Corporation, the charterer as aforesaid, had its name changed under the laws of the state of New York to National Coal & Ice Company, Inc., which is the respondent herein, and on September 13th of the same year the respondent employed the Cornell Steamboat Company, a New York corporation, to tow the said barge from New York to the Yonkers city ice house, at Castleton, N. Y. This contract was duly performed, and on September 19th the charterer engaged the Cornell Company to tow the boat from Castleton back to New York. In the performance of this contract it appears that on September 21st, at about 12:50 p. m., it landed the boat at the end of the pier at the foot of Fifty-Fourth street, North River.

Later on the same day, September 21st, the tug Athens backed out of the slip, and in doing so collided with the barge Flannery as she was lying at the end of the pier, causing the damage for which this libel was filed against the National Coal & Ice Company, Inc., as the charterer, and against William G. McAdoo, as Director General of Railroads. The last named was made a party, inasmuch as the tug Athens was owned by the Lehigh Valley Railroad Company, which at that time was operated by Mr. McAdoo as Director General of Railroads.

The National Coal & Ice Company, Inc., impleaded the Cornell Steamboat Company, on the ground that, if the collision was due to any fault in the position of the barge at the end of the pier, liability for that fault should be placed on that company; her tugs having put the barge at the pier's end. During the trial it developed that the libelant had settled his claim against the owner of the Athens for 50 per cent. of his damages. The District Judge held the Cornell Company at fault, and awarded to the libelant the remaining 50 per cent. of the damages still unpaid.

The libel alleged that the charterer was at fault for allowing the barge to lie at the end of the pier, in violation of the statute of the state of New York, and that the tug was at fault for her negligence in col-

liding with the barge while leaving the slip. The Cornell Company's answer alleged that the towage services were at an end when the tow was properly made fast at the pier, and that, if any damages were subsequently sustained, they did not occur while the boat was in its custody, but were due solely to the fault of the tug Athens and to the persons in charge of the Flannery.

The violation of the statute can be invoked only by vessels of the class enumerated by the statute, viz. those entering or leaving "a slip adjacent to the pier end at which the offender lies." The Cincinnati (D. C.) 95 Fed. 302. But the vessel with which the collision occurred in the case now before us was within the enumerated class, as she was leaving the adjacent slip.

It has been held in a number of instances that a vessel moored at the end of a pier, so as to obstruct the proper navigation of another vessel in making her entrance to or exit from her dock or wharf, infringes on the privileges of the other, and is responsible for the damages caused by the collision, if the other vessel has exercised due precautions. The Martino Cilento (D. C.) 22 Fed. 859; The Canima (C. C.) 32 Fed. 302; The Etruria (D. C.) 88 Fed. 555.

In The Dean Richmond, 107 Fed. 1001, 47 C. C. A. 138, Judge Wallace, in 1901, speaking for himself and Judges Lacombe and Shipman, held that the statute does not relieve a moving vessel, entering or leaving an adjacent dock, from liability for a collision with a vessel lying at the exterior end of a wharf, if the vessel so moored did not unduly obstruct navigation, and where the moving vessel was not seeking entrance to an adjacent slip.

In The New York Central No. 18, 257 Fed. 405, 168 C. C. A. 445, this court recently declared that this statute does not absolutely prevent a vessel lying at the pier end from recovering against manifest tort-feasors. But we declared, also, that a violation of the statute is sufficient evidence and sufficient reason for imputing fault to the disobeying vessel. It is evidence of negligence, and casts on the disobedient vessel the burden of showing affirmatively that the violation did not contribute to the injury giving rise to the suit.

In The Daniel McAllister, 258 Fed. 549, 169 C. C. A. 489, the barges were tied up at the end of a pier in violation of the statute. A tug attempted to take a coal barge out of a slip in the East River on a strong flood tide, on a hawser, instead of alongside, and in doing so collided with boats lying at the end of the pier. It appeared that there was ample room for the tow to pass out safely, if properly navigated. Under the circumstances this court held that the presence of the barges at the end of the pier was not a contributory cause of the collision, and that the proximate and producing cause was the negligent navigation of the McAllister, and she was held solely at fault for the damage caused by the collision.

In Howell v. Delaware, L. & W. R. Co. (C. C. A.) 262 Fed. 119, this court pointed out again that it is possible for vessels at the pier end affirmatively to show, either that their violation of the statute neither caused nor contributed to the disaster, or that the "entering or leaving" vessel herself contributed thereto.

The fact that the barge was placed at the end of the pier, and that this was in violation of a New York statute, is supposed to establish the proposition that her position contributed to the injury which she received, and, being herself at fault, she was only entitled to recover from the tug Athens half damages, assuming the tug to have been at fault. It is therefore argued that the Flannery is entitled to recover for the other half of the damages she suffered from the charterer, if not from the Cornell Company, which did the towing and placed the barge in her improper position.

The case therefore again brings before this court the New York statute which has given rise to much misapprehension and misunderstanding. The New York City Charter provides:

"It shall not be lawful for any vessel, canal boat, barge, lighter or tug to obstruct the waters of the harbor by lying at the exterior end of wharves in the waters of the North or East River, except at their own risk of injury from vessels entering or leaving any adjacent dock or pier; any vessel, canal boat, barge, lighter or tug so lying shall not be entitled to claim or demand damages for any injury caused by any vessel entering or leaving any adjacent pier." Section 879, New York City Charter (Laws 1901, c. 466).

This court has held that, while this statute is not binding upon the federal courts, it may afford grounds for imputing fault to a vessel violating it. The Chauncey M. Depew, 139 Fed. 236, 71 C. C. A. 362; The Allemania, 231 Fed. 942, 146 C. C. A. 138.

[1, 2] Was the presence of the Flannery at the end of the pier a contributing cause of the injury? She had the burden of showing affirmatively that her presence there did not contribute to the collision with the tug Athens. Has she sustained the burden? The District Judge expressed himself as not free from doubt as to whether the position of the Flannery at the end of the pier contributed to the collision; but he resolved the doubt against the Flannery and held that her faulty position did contribute to the result. We cannot agree with that conclusion. The record shows that the Flannery did not obstruct a vessel entering or leaving the slip north of Pier 95. The libelant's boat did not project further north than the middle of the end of that pier. She did not project, therefore, across the slip, and it is conceded that the slip was 200 feet wide. Making due allowance for the presence of another barge within the slip, which presumably was 30 feet wide, there must have been abundant space for the tug Athens, if she had been properly navigated, to pass in or out without difficulty. That the Flannery did not obstruct the entrance to and egress from the slip appears from the fact that the Athens had experienced no difficulty in entering the slip a short time before the accident happened.

With knowledge of the fact that the Flannery was where she was, the tug undertook to back out of the slip, and she would have had no difficulty in doing so, if it had not happened that, as she was nearly out, she discovered that the tug Robert Scott was coming up the river, about 250 feet off the end of the dock, and the Athens stopped to let her go by, with the result that the tide carried the Athens down, and her stern hit the Flannery. But the Athens knew that in backing out of the slip there might be boats coming up or going down the river,

and so close to the pier that it might be necessary to stop. Just such an occurrence was to be expected. The Athens also knew that the tide was ebb, and that if she was too close to the pier, and was compelled to stop on ebb tide, she would be carried against the pier, and yet she chose to navigate in such close proximity to the pier that the very thing happened which she should have anticipated might happen, and which she should have guarded against by keeping further away from the pier.

Under the circumstances the navigation of the Athens was faulty. She knew of the presence of the Flannery at the pier's end, and she had no right to disregard that fact. There was ample room for the tug to pass out of the slip, if she had been properly navigated, and the presence at the pier end of the Flannery cannot be regarded as a contributory cause of the collision under the rule laid down in The Daniel McAllister, 258 Fed. 549, 169 C. C. A. 489. And if the Flannery had been an obstruction to the navigation of vessels entering or leaving the slip, which she was not, she could not have been regarded as an outlaw. It would still have been the duty of the Athens to exercise care according to the circumstances, and not to move out in a way that would likely, on an ebb tide, result in a collision if she should be held up, as was likely to happen and did happen, by a vessel passing up or down the river. The Westernland (D. C.) 24 Fed. 703; The Baker Brothers, 260 Fed. 650, 171 C. C. A. 414; The Lady of Gaspe (C. C. A.) 276 Fed. 900, 902.

The Chauncey M. Depew, supra, is not in conflict with the conclusion we have reached. In that case the Deyo, which was the injured vessel, was lying at the end of a pier, but not so as to project beyond the south line of the pier, although she came out to that end of the pier and actually projected beyond the north end of the pier. The tug had three barges in tow, and was destined to enter the slip at the south end of the pier, so that her barges could unload into a barge already there; and it was necessary under the circumstances existing in that case for the tug to enter the slip close up to the south end of the pier, and to make entrance into the slip on the corner of the pier, by running a line from the entering barge to the pier, turning the barge on the corner of the pier, and swinging her into the slip by her line. This was the customary method adopted, because of the shoals off the entrance to the slip on the lower side of that pier, and the usual maneuver was adopted by the Depew in that case. In this case the tug made the maneuver on the corner of the canal boat, instead of on the corner of the pier. The court held that the tug was not in fault for undertaking to make the turn on the corner of the canal boat, instead of on the corner of the pier, and the court declared that, "to effect an entrance, it was necessary first to bring her side up to the lower corner of the pier end."

Under the peculiar conditions the moored boat was an obstruction to navigation, and occupied water which was required to allow the tow to be warped around the corner of the pier "in the usual and proper manner." But in the case now before the court there was no necessity

whatever for the Athens to navigate close up to Pier 95, and there is no analogy between the present case and that of the Depew.

In view of the conclusion reached, that the Flannery did not constitute an obstruction to navigation and did not contribute to the collision, the decree is reversed.