## THE F. J. NO. 28. THE MORRISTOWN. JONES v. DELAWARE, L. & W. R. CO.

(District Court, S. D. New York. July 10, 1924.)

1. Collision ☞71(3)—Tug held not liable for collision between a car float alongside and a scow lying at the end of a pier and obstructing entrance to slip.

Where libelant's scow, lying outside a dredge at the end of a pier, extended for 60 feet across the opening of the adjacent slip, such obstruction *held* a contributing cause to a collision between the scow and a car float, in tow alongside a tug entering the slip, and to defeat libelant's recovery, in the absence of evidence establishing negligence or fault of the tug.

2. Collision ☞71(3)—Dredging contractor held not privileged to unnecessarily obstruct entrance to slip when not engaged in work.

The fact that libelant was engaged in dredging work for the government, as a private contractor, does not change the rule making it evidence

of negligence to tie up his boats at the end of a pier when not at work, so as to unduly obstruct entrance to a slip.

3. **Collision** ⬡═⇒74—**Owner of boat moored at end of pier in violation of New York charter has burden of proving that such violation did not cause or contribute to collision.**

> While the mooring of a vessel at the end of a pier in North or East River, in violation of New York City Charter, § 879, so as to obstruct entrance to a slip, is not sufficient to charge the violator with fault for a collision with a vessel entering the slip, it is evidence of fault, and casts on him the burden of proof.

In Admiralty. Suit for collision by Fred E. Jones, owner of the scow F. J. No. 28, against the steamtug Morristown; the Delaware, Lackawanna & Western Railroad Company, claimant. Decree for respondent.

Macklin, Brown & Van Wyck, of New York City (Horace L. Cheyney, of New York City, of counsel), for libelant.

J. E. Morrissey, of New York City, for claimant.

WINSLOW, District Judge. This action is brought by the libelant, owner of scow F. J. No. 28, to cover damage sustained by the scow as a result of collision between the scow and Delaware, Lackawanna & Western car float No. 18, in tow of the tug Morristown, at Pier 68, North River, July 28, 1920. Pier 68 is leased by the Delaware, Lackawanna & Western Railroad Company from the city of New York. On the end of the pier was the following sign in large letters:

"Private Dock. Boats not allowed to tie up here."

[1] On the day of the collision, at about 7:30 o'clock in the evening, dredge No. 6, operated by the libelant, was moored to the outshore end of the pier. Two of libelant's scows, the F. J. No. 22 and F. J. No. 28, were moored tandem outside the dredge, and were made fast to the dredge and to each other. The bow, or down-stream end, of the dredge extended about 30 feet south of the southerly line of Pier 68, and the down-river end of scow F. J. No. 28 extended at least 30 feet beyond the end of the dredge. Some of the witnesses testified that it extended 35 or 40 feet. Assuming the minimum, however, the down-river end of the scow F. J. No. 28 extended at least 60 feet beyond the southerly line of Pier 68. The libelant, at the time, was engaged in dredging the pier line under a contract with the United States government. The scows, including F. J. No. 28, had both been loaded, and work had been suspended awaiting a tug to tow the two loaded scows to sea. The tug Morristown, with Delaware, Lackawanna & Western car float No. 18, with loaded cars made fast on her port side, had proceeded up the North River, approaching Pier 68, for the purpose of docking the car float on the southerly side of Pier 68, North River. The tide was toward the end of the flood. While entering the slip, the port side of the car float came in contact with the down-river end of scow F. J. No. 28, causing damage which resulted in the sinking of scow F. J. No. 28 within a short time.

There is a sharp conflict of testimony as to just how the collision occurred and the point of contact. The libelant's witnesses say that the

port forward corner of the float struck the scow. The witnesses for the claimant say, in substance, that the after port quarter of the car float struck the bow or down-river end of the scow; that the scow was approximately 240 feet long, and the bow of the car float was at least 140 feet in from the outshore end of the pier when the collision occurred.

I am of the opinion, from observing the witnesses and listening carefully to their responses to questions, that claimant's story approximates the correct version as to the point of contact. If this were true, it is manifest that the port forward quarter of the float could not and did not touch the scow. The witness McNeil was on top of a car on the port side of the float. He says that, as the Morristown, with her float, approached the pier, the whistles of the tug were blown to signal the scow and the dredge to move, and he hollered to the man on the scow to slack up and stand by, but that no attention was paid to the signals, either of the whistles or the verbal requests, and that as the car float then was nosed in, the flood tide carried the port stern quarter of the float against the corner, or bow, of the scow. This witness' version is clear and convincing.

The claimant calls the court's attention to section 879 of the New York City charter (Laws 1901, c. 466), wherein it is made unlawful for any vessel, boat, barge, etc., to obstruct the waters of the harbor while lying at the exterior end of the wharves in the waters of the North and East Rivers, except at their own risk of injury from vessels entering or leaving any adjacent dock or pier, and any vessel, canal boat, barge, lighter, or tug so lying shall not be entitled to claim or demand damages for any injury caused by any vessel entering or leaving an adjacent pier.

The libelant contends that this section of the charter has no application to the instant case; that the libelant was engaged in public work for the government, and that the public work so in progress required it to lie at the end of the pier in order to perform its work; that the waters at the end of the pier are public navigable waters, and were not under the control of the railroad company; that the federal government had full authority to authorize vessels to lie in that position for the purpose of improving the navigable waters.

[2] I am of the opinion that the fact that the libelant was engaged in public work does not change the rules applicable to the instant case. Libelant is a private contractor. The question to be determined is whether or not the loaded scow at the end of the pier unduly obstructed navigation, and whether, for that reason, its presence in the present instance, extending some 60 feet south of the southerly line of Pier 68, was a contributing factor to the collision.

[3] Libelant's scows had been loaded and were moored tandem, as stated, awaiting the libelant's convenience or an opportune time when a tug should come to tow them out to sea. Section 878 of the Charter of the City of New York, to which the court's attention has been directed, has been construed and applied under numerous decisions in this circuit. Under such decisions, while a violation of the statute is not suffi-

cient evidence or sufficient reason for imputing fault to the violator, nevertheless, it had been well said that:

"A departure therefrom, like a departure from any other legal rule, is evidence of negligence and casts on the violator the burden of showing affirmatively that the violation did not contribute to the injury giving rise to the suit." The N. Y. C. No. 18, 257 Fed. 405, 408, 168 C. C. A. 445.

The libelant's witnesses admitted, under cross-examination, that the presence of the dredge and the scows extending into the slip at least 60 feet interfered with the navigation of vessels entering or leaving the slip, and the sketches introduced in evidence, showing the narrow entrance, convince the court that the libelant's barges were a serious obstruction to navigation.

The dredging work had been suspended, the barges were loaded, and it would seem that the tug which was to take the scows to sea did not arrive until approximately an hour after the collision, presumably at about the time the tide started to ebb. It is apparent that none of the libelant's employees, on the scows or elsewhere, made any attempt to assist the claimant's tug and float, when it was apparent that the float was about to enter the slip. Had they slackened the lines on the scow, it is probable that the collision would have been avoided, or, in any event, mitigated the possible damage. Certainly, libelant's scows could not continue to obstruct navigation until it suited libelant's convenience to have them towed away. The master of the Morristown presumably believed that there was sufficient room, with careful handling, to make the slip, and he was justified in expecting some assistance, if necessary, from the scows.

I am of the opinion that the libelant has not sustained the burden upon him of establishing fault on the part of the claimant and that the projecting scow was the contributing cause of the collision. Some seven or eight employees were on the dredge and scows. None of them, however, have been produced as witnesses on the trial, and only in the case of one witness is a satisfactory explanation given as to these witnesses not having been produced.

The libel should be dismissed, with costs.